576 So.2d 992 (1991)
James ROBERSON
v.
PROVIDENT HOUSE.
No. 90-C-1388.
Supreme Court of Louisiana.
March 11, 1991.
James Roberson, in pro. per.
Mack E. Barham, Robert E. Arceneaux, for James Roberson plaintiff-applicant.
*993 C. William Bradley, Jr., Lemle, Kelleher, for Provident House, Gemar, Inc. and St. Paul Fire and Marine Ins. Co., defendants-respondents.
HALL, Justice.
This suit is for damages that plaintiff, James Roberson, allegedly received from having an in-dwelling catheter inserted and then removed from his bladder while he was a patient at the Provident House nursing home. Plaintiff sued Gemar, Inc., d/b/a Provident House; its insurer, Western World Insurance Company, and Dr. Joseph Brenner, his physician at the nursing home. Dr. Brenner was dismissed from the suit because a complaint was not filed with a medical review panel as required by LSA-R.S. 40:1299.47. St. Paul Fire & Marine Insurance (St. Paul) was substituted as insurer of Provident House, and Western World Insurance was dismissed with prejudice upon showing that it was not Provident House's insurer at the time of plaintiff's injury. The trial court found that plaintiff failed to prove negligence or a breach of a standard of care and, therefore, dismissed plaintiff's suit. The court of appeal, finding that the plaintiff had failed to establish a standard of care, affirmed the trial court judgment with one judge dissenting. Roberson v. Provident House, 559 So.2d 838 (La.App. 4th Cir.1990). Having granted plaintiff's writ application, 567 So.2d 597 (La.1990), we now reverse in part and affirm in part.[1]

FACTS
Plaintiff has been a quadriplegic since being shot during a robbery in 1972. He often lives with Marcelle and James Conner, his sister and her husband, but he resides in a nursing home when they are unable to care for him. He was transferred from the V.A. hospital in New Orleans to Provident House in March of 1982. On April 4, 1982, Dr. Brenner, a physician paid by Provident House, made an entry on the physician's order sheet which states, "Insert Foley (PRN)." It was established at trial that this notation, which means that an in-dwelling catheter should be inserted as needed, was made by Dr. Brenner in response to information from a nurse at Provident House that there were problems with the out-dwelling catheter which was being used. The out-dwelling catheter is a condom-like device that fits over the penis, while the in-dwelling catheter is an intrusive device which is inserted into the bladder through the penis and the urinary tract. Dr. Brenner testified that he did not ask plaintiff about the use of an in-dwelling catheter.
On April 20, 1982, an in-dwelling catheter was inserted into plaintiff by one of the nurses at Provident House. Plaintiff's deposition was admitted into evidence, without objection, in lieu of live testimony. In that deposition, plaintiff testified that he objected to the use of the in-dwelling catheter, but was told to "shut up." Plaintiff testified that a doctor at a V.A. hospital in Memphis had warned against using an in-dwelling catheter because it would cause plaintiff to have bladder spasms and an inability to urinate.
The nurses' notes for April 30, 1982, although almost illegible, appear to state as follows: "Family called and stated that they wanted internal cath. taken out and who gave the order to put in an internal cath. Family stated that they wanted the internal cath. taken out."
On May 2, 1982, the in-dwelling catheter was removed. However, on May 7, 1982, it was reinserted into plaintiff. Plaintiff testified that he begged them not to put it in because there had been complications with in-dwelling catheters in the past and because it caused him great pain.
His objections were ignored until May 19, 1982, when a nurse at Provident House apparently became aggravated by the plaintiff's complaints and jerked the catheter out of plaintiff. This resulted in a discharge of blood and pus from his penis sufficient to require him to be taken by *994 ambulance to the V.A. hospital for emergency treatment. He stayed at the V.A. hospital for eight days. He was then taken home by his sister, Mrs. Conner. She testified that since the incident, plaintiff has had a decrease in his urine output from about 1,200 c.c. to 150 c.c. per day. She also testified, as did plaintiff, that he experiences a lot of pain when he urinates. Mrs. Conner said that although plaintiff used to be able to sit up in a wheel chair for hours, the pain since the incident has severely restricted his time in the wheel chair.

LIABILITY
LSA-R.S. 40:1299.56 of the Louisiana Medical Consent Law provides that "Nothing contained herein shall be construed to abridge any right of a person 18 years of age or over to refuse to consent to medical or surgical treatment as to his own person." Recently, this court concluded that the right to privacy contained in Art. 1, § 5 of the 1974 Louisiana Constitution protects an individual's right to decide whether to obtain or reject medical treatment. Hondroulis v. Schuhmacher, M.D., 553 So.2d 398, 410 (La.1988), on reh'g (La. 1989). As recognized by this court in Pizzalotto, M.D., LTD. v. Wilson, 437 So.2d 859 (La.1983), a surgeon commits a battery on his patient when he undertakes a particular surgical procedure without the consent of the patient unless there is an emergency situation.
Likewise, a nurse commits a battery upon a patient when she performs an invasive procedure like the insertion of an in-dwelling catheter over the objections of the patient. There was no emergency situation present here. The nurses' notes reflect that the in-dwelling catheter was inserted because the external catheter was ineffective and was causing irritation. The plaintiff testified that he objected each time the catheter was to be inserted. This is supported by the nurse's note of May 11, 1982, which states in part that "Pt. became very upset when catheter was inserted and notified his family." Plaintiff was subjected to a medical procedure to which he did not consent. In fact, it was done over his objection when no emergency situation required it. The record clearly supports a finding that a battery was committed upon the plaintiff by a nurse at Provident House.
Defendant argues that the plaintiff failed to prove that the nurse who inserted the catheter was an employee of Provident House. This argument is without merit. The Provident House records contain daily entries which indicate that plaintiff was cared for on a daily basis by nurses at Provident House. At trial, these nurses were referred to as part of the staff of Provident House, and their status as employees is consistent with the nature of the ministerial work done by nurses, as opposed to the decision-making duties of physicians who are often independent contractors.
Defendant argues that plaintiff tried this case as a medical malpractice claim and that recognizing a battery claim on appeal would prejudice the defendant. Our Code of Civil Procedure sets forth a system of fact pleading. LSA-C.C.P. Arts. 854, 891, 1003, 1004. The old theory of the case system of pleading has been abolished. LSA-C.C.P. Arts. 862, 1154, 2164. As stated by this court in Cox v. Heroman & Company, Inc., 298 So.2d 848, 855 (La. 1974), "So long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence."
As part of defendant's effort to show that it would be prejudiced if we recognize a battery claim on appeal, it argues that the plaintiff's petition sets forth a negligence claim rather than a claim of intentional tort. Because we find that the pleadings were expanded at trial to include a claim of battery, it is unnecessary to reach the issue of whether the plaintiff's petition, as written, would support a recovery for the battery in this case. However, we note that whether plaintiff's damages are recoverable under a theory of negligence or a theory of battery is not something that plaintiff must specify in his petition or be held to if he does so specify.
*995 LSA-C.C.P. Art. 1154 provides in part that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading." The general rule as stated by this court in Webster v. Rushing, 316 So.2d 111 (La.1975), is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and, hence, would have been excluded if objected to timely. See Austrum v. City of Baton Rouge, 282 So.2d 434 (La.1973); Pond v. Campbell, 251 La. 921, 207 So.2d 535 (1968); Stanley v. Jones, 201 La. 549, 9 So.2d 678 (1942); Hope v. Madison, 192 La. 593, 188 So. 711 (1939).
Plaintiff was unable to attend the trial in person because of his physical condition, therefore, his deposition was admitted into evidence in lieu of his live testimony. See LSA-C.C.P. Art. 1450(A)(3)(a). It was admitted in its entirety without objection. Contained in the deposition is the stipulation agreed to by defendant that all objections, other than objections as to the form of the question, would be reserved until such time as the deposition or any part of it was sought to be used at the trial. Nevertheless, the entire deposition was admitted without objection. In the deposition, plaintiff clearly sets forth facts which constitute a battery. Plaintiff stated that he told the nurse not to insert the catheter before each time it was done. Nevertheless, on more than one occasion the catheter was inserted into plaintiff.
Defendant argues that the plaintiff's deposition was admissible concerning the issue of negligence and, therefore, did not expand the pleadings to include a claim of battery. However, this argument overlooks the fact that defendant could have objected to the admission into evidence of the parts of the deposition which related only to the issue of lack of consent or battery. Defendant failed to object to the admission of any part of the deposition.
Additionally, the nurses' notes, which state that plaintiff became upset when the catheter was inserted, were part of the medical record admitted into evidence without objection. At trial, Dr. Brenner was asked if he was aware that plaintiff told the staff not to use an internal catheter. Once again, there was no objection by defendant.
Evidence which was sufficient to support a claim of battery, and which was not pertinent to any other issue raised by the pleadings was adduced at trial without objection. With knowledge in advance of trial of the contents of the deposition, defendant had fair notice that the testimony contained therein would support recovery under a theory of lack of consent or battery. Therefore, the pleadings were expanded to include the battery claim. LSA-C.C.P. Art. 2164 provides in part that "The appellate court shall render any judgment which is just, legal and proper upon the record on appeal." Accordingly, we hold that the record supports a judgment against Provident House for battery committed by one of its employees upon the person of plaintiff.
St. Paul denied that it had a policy of insurance covering Provident House in effect at the time of the incident involved in this case. Plaintiff failed to introduce any evidence that such a policy was in effect. Therefore, plaintiff has failed to prove that he is entitled to any recovery against St. Paul.

DAMAGES
Plaintiff undoubtedly experienced considerable pain and suffering as a result of having this catheter inserted into his body against his will and in spite of his objections. The physical injury which this battery produced was evidenced by the blood and pus which appeared after the catheter was jerked out of him. This injury required emergency treatment at the V.A. hospital where plaintiff remained for eight days. Plaintiff experiences a burning sensation each time he urinates. Since the incident, plaintiff's daily urinary output has decreased. Dr. Potter, plaintiff's family physician, testified that the episode may have caused scar tissue leading to stenosis of the urethra, resulting in reduced urinary *996 output and in future problems with urinating. However, the record shows that in-dwelling catheters were used on plaintiff both before and after the episode at Provident House. Considering this fact and plaintiff's long-standing physical problems, not all of plaintiff's present complaints can be attributed to defendant's actions. Therefore, we feel that an award of $25,000 is sufficient to recompense plaintiff for the mental and physical pain and suffering which this ordeal has caused and will continue to cause in the future. Plaintiff did not offer any evidence concerning the cost of doctor and nurse services or drugs, past or future. No special damages were proved.

DECREE
For the foregoing reasons, the judgment is reversed in part and affirmed in part. It is now ordered that the judgment dismissing plaintiff's suit against defendant, Gemar, Inc., d/b/a Provident House, is reversed, and that a judgment in the amount of $25,000, together with legal interest thereon from date of judicial demand until paid and all costs of this proceeding, is hereby rendered in favor of plaintiff, James Roberson, and against Gemar, Inc., d/b/a Provident House. The judgment dismissing plaintiff's suit against defendant, St. Paul Fire & Marine Insurance, is affirmed.
REVERSED IN PART AND AFFIRMED IN PART.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
I agree that plaintiff proved his lack of consent to the insertion of the catheter and is entitled to damages caused by the insertion over his objection.
The decision in Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988), involved the issue of lack of informed consent. I joined in that decision, not because I agreed with the opinion based on a constitutional right to privacy, but because I agreed with the alternative basis of statutory interpretation. In the present case, invasion of privacy is an appropriate consideration in determining liability based on injection of a catheter without consent.
NOTES
[1] Plaintiff was represented by counsel in the district court. He appeared without counsel but assisted by his brother-in-law, James S. Conner, in the court of appeal and in his writ application to this court. Appellate counsel enrolled after the writ was granted.