698 So.2d 482 (1997)
UNITED STATES FIDELITY AND GUARANTY COMPANY
v.
Susan HURLEY, et al.
No. 96-CA-1421.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 1997.
*483 Albert J. Nicaud, Law Office of Nicaud & Sunseri, Metairie, for Plaintiff/Appellee United States Fidelity and Guaranty Company.
Peter M. Meisner, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for Defendant/Appellant Susan Hurley.
Before LOBRANO, JONES and MURRAY, JJ.
MURRAY, Judge.
Susan Bryson appeals a judgment in favor of her former lessor, Jan Gravolet, and the lessor's insurer, United States Fidelity and Guaranty Company (USF & G), awarding a total of $14,284.77 in damages resulting from a fire found to have been caused by a smoldering cigarette. Ms. Bryson, a nonsmoker, asserts that she cannot be held liable for the fire. She also challenges the entry of judgment in favor of Ms. Gravolet, because USF & G was the only plaintiff named in the pleadings, and the inclusion of Vermont Mutual Insurance Company, Ms. Bryson's insurer, as a judgment debtor, because it was neither named a defendant nor served in these proceedings. We affirm the judgment for the reasons that follow.

FACTS
Susan Bryson, Susan Hurley, and Eve Stanley, all college students, rented a duplex apartment in Uptown New Orleans from Benjamin and Jan Gravolet from June 1989 through May 1990.[1] On the evening of March 10, Eve Stanley went to stay at her grandparents' home, while Ms. Bryson, Ms. Hurley, and two male guests, Terry Stein and James Goodman,[2] spent the evening watching videotaped movies in the living room. Although Ms. Bryson had agreed to allow Mr. Stein to stay at the apartment temporarily as a favor to a friend, he was not given a key and had to leave the premises if all of the tenants were out.
The living room was furnished with a sofa, loveseat and chair, all covered with the same cotton material, and at one point or another that night, each of those watching TV had occupied these various locations.[3] During the early part of the evening, Ms. Hurley, Mr. Stein and Mr. Goodman smoked cigarettes, but ran out around 8:00 p.m., before the end of the first movie. Mr. Goodman left *484 shortly thereafter, and Ms. Bryson went upstairs to bed sometime after 11:00 p.m. Mr. Stein was next to retire for the evening, leaving Ms. Hurley to watch TV alone until about 1:00 a.m., when she also went upstairs to bed.
Both Ms. Bryson and Ms. Hurley were awakened sometime after 3:00 a.m. by the ringing of their doorbell and banging on the front door. Ms. Hurley also heard laughing or voices in the alley beneath her window. They chose to ignore the noises and went back to sleep. They were awakened again sometime later by the telephone; the caller hung up when the phone was answered. Within the same approximate time period, both young women also heard glass breaking downstairs, but neither testified with any certainty about where these sounds fit into the sequence of noises. However, shortly after the phone rang a second time, Ms. Hurley got up and opened her bedroom door to discover smoke filling the house and the crackling and popping sounds of a fire from downstairs. All occupants escaped safely, but the duplex suffered extensive damage.
After the fire had been extinguished, Ms. Bryson, Ms. Hurley, and Jan Gravolet, who had been called to the scene by her tenants, learned from a neighbor that a young woman had been seen outside of the apartment in the early hours of the morning while someone else waited in a car out front. It was later confirmed that Mr. Stein's former girlfriend and her acquaintance had knocked on the front door. When they got no response, the former girlfriend had gone up the side alleyway while her friend returned to the car. Although these visitors discovered the fire, they did not report it because they heard the sirens of approaching fire engines as they pulled away from the duplex.
On March 15, 1990, George Hero, III, an expert in the cause and origin of fires, inspected the premises and spoke with the New Orleans Fire Department investigator. Mr. Hero testified at trial that both he and the Fire Department concluded that the fire originated in the sofa in Ms. Bryson's living room and that the most likely cause was a cigarette that had smoldered for several hours before flames erupted. Although he acknowledged that the presence of the two "trespassers" prior to the fire's discovery could be indicative of arson, he found that the physical evidence and burn patterns were inconsistent with that hypothesis.
USF & G sued Ms. Bryson, Ms. Hurley and Mr. Stein, and later added as defendants the two young women who had been seen outside the apartment before the fire's discovery. Because Ms. Hurley had settled with USF & G for $21,300.00 and Mr. Stein had not been served on the main demand, only USF & G's claim against Ms. Bryson was tried to the court in November 1995.[4] The matter was taken under advisement, with each party submitting post-trial arguments.[5]
The court rendered judgment against Ms. Bryson for one-third[6] of the damages, explaining in written reasons that it accepted the expert's opinion that the fire had resulted from a smoldering cigarette. Although the court acknowledged that Ms. Bryson, a nonsmoker, was not the direct cause of the fire, her liability was found to exist because:
[Ms. Bryson] and the other lessees permitted smoking to occur on the premises and neither she nor the other lessees showed that they had any precautions or guidelines for smoking in the apartment, i.e., smoking only in certain designated areas or that cigarettes were properly extinguished after smoking. In fact, Susan Bryson went to bed and left others smoking downstairs.
Hence, the Court finds that neither Susan Bryson nor the other lessees have shown that they are free of fault for protecting the lessor's property from the risk *485 of fire while permitting others to smoke in the apartment.
While stating that a lessee is not strictly liable for damages incurred during her lease term, the court decided that "Civil Code Articles 2719, 2720 and 2723 provide that a lessee must return the premises ... in the same good order that he received them except for normal wear and tear and for unavoidable accidents."

DISCUSSION
1. Ms. Bryson's liability
Ms. Bryson contends first that the court below erred in requiring that she prove herself to be free from fault because Civil Code article 2723, as interpreted in Louque v. T.S.C. Motor Freight Lines, 200 La. 393, 396, 8 So.2d 66, 67 (1942), provides that this is the lessor's burden when damage results from a fire. She further asserts that she cannot be liable for failing to prevent the fire, as the trial court implied, because she owed no legal duty to prohibit or restrict smoking. Because the court rejected USF & G's claim that she was strictly liable as lessee, and because she was found not to have caused the fire, Ms. Bryson maintains that the judgment against her must be reversed.
USF & G counters that, under jurisprudence noted in its written reasons, the trial court properly required that Ms. Bryson show she was free from fault, and correctly found her liable for the negligent acts specified in the reasons for judgment. In addition, because the evidence indicates Mr. Stein, Ms. Bryson's guest, was sitting on the sofa all evening,[7] it is asserted that Civil Code article 2723 renders her liable for the negligence of this "member of her household." Finally, USF & G claims that because the lease obligated Ms. Bryson to return the premises in good condition, excepting only normal wear and tear, she is liable for breach of contract.
The Civil Code articles relevant to this case provide as follows:
Article 2720: If no inventory has been made, the lessee is presumed to have received the thing in good order, and he must return it in the same state, with the exceptions [for wear and tear and for unavoidable accidents].
Article 2721: The lessee is only liable for the injuries and losses sustained through his own fault.
Article 2722: He is, however, liable for the waste committed by the persons of his family ["household" in French text], or by those to whom he may have made a sublease.
Article 2723: He can only be liable for the destruction occasioned by fire, when it is proved that the same has happened either by his own fault or neglect, or by that of his family ["household" in French text].
Addressing first the dispute concerning the burden of proof, it appears that each party is partially correct. As noted by Ms. Bryson, our Supreme Court held in Louque, supra, that Article 2723 requires a lessor to prove a lessee's fault in order to recover for fire damage to the leased premises. However, as in the cases relied upon by the trial court, the evidentiary doctrine of res ipsa loquitur frequently has been found applicable in determining if the landlord has carried his burden of proof on this issue. See Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972) (on rehearing); Maryland Casualty Co. v. Saunders, 394 So.2d 1256 (La.App. 4th Cir.1981). Thus, if the lessor shows that the lessee had exclusive control over the premises AND the lessee is unable to establish that the fire could have resulted from something other than his negligence, the lessee is held liable under Article 2723. Boudreaux, supra; Maryland Casualty, supra.
In the instant case, the trial court was presented with USF & G's evidence that the fire resulted from careless smoking, while Ms. Bryson attempted to establish that it was caused by the deliberate act of the young women seen outside the house after the residents had gone to bed. Considering this evidence and the jurisprudence regarding the burden of proof, the court rejected Ms. Bryson's arson theory, finding that "the plaintiff *486 has proved that the most likely cause of the fire was a smoldering cigarette on the couch.... Hence, the burden shifts to the lessee to show that the fire did not result from any fault on their [sic] behalf." We find no legal or factual error in this conclusion.
However, we must agree with Ms. Bryson's contention that the court below erred in finding that under these circumstances, her conduct relative to smoking by her guests and co-lessee constituted actionable fault. The written lease between the parties neither prohibited nor restricted smoking, and Ms. Gravolet acknowledged at trial that she and her husband had not imposed such conditions on any of their 50 or more rental properties. Despite the lack of a contractual provision on the subject, the trial court found Ms. Bryson liable because she imposed no restrictions on cigarette smoking by her co-tenants and guests, and because she went to bed without ensuring that no hazards remained from the cigarettes smoked by others.
A legal duty is the obligation one has to conform to the standard of conduct associated with a reasonable person under like circumstances. Fox v. Bd. of Supervisors of LSU, 576 So.2d 978, 981 (La.1991). Absent an express stipulation of a higher standard in the lease, Ms. Bryson's duty was to exercise the caution of a reasonably prudent person to protect the lessor's premises. In this case, neither the trial court nor USF & G has identified any statute, jurisprudence or evidence suggesting she had a duty to control or restrict smoking in this private residence, especially by her co-lessees. There was no evidence that any of those smoking that evening had dropped a cigarette or live ash, suggesting that Ms. Bryson should check the furniture,[8] nor that any of these young adults demonstrated any behavior necessitating her supervision of their activities. In sum, it was not established that Ms. Bryson had a legal duty under these circumstances to conform her conduct to the standard imposed by the trial court. Therefore, she cannot be held liable under Article 2723 for her "own fault or neglect."
Nevertheless, the judgment against Ms. Bryson must be affirmed. In its original form, Civil Code article 2723 specifies that a lessee is liable for fire damage caused by his own fault "or by that of his household." As there is no stipulation to the contrary in the parties' lease, this codal provision governs Ms. Bryson's liability. Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261, 1264 (La. 1981). Planiol explains that under the source provisions in the French Civil Code, the lessee is answerable to the lessor if "he has been responsible for the presence in the premises of the person causing the damage," even if the loss resulted from an intentional act by a member of his household. 2 Planiol, Civil Law Treatise, No. 1692A (La. State Law Institute Translation 1959). While Planiol's treatise refers to a lessee's relatives, domestic servants and mistress as included in his "household," no Louisiana jurisprudence defining this term was found.[9] However, "[c]omments of French authors interpreting articles adopted from the French Civil Code are entitled to great weight." Martin v. La. Farm Bureau Casualty Ins. Co., 94-0069, p. 4 (La.7/5/94), 638 So.2d 1067, 1069 (citations omitted).
In this case, it was determined that the fire resulted from careless smoking by one of those present in the apartment, whether Ms. Bryson's co-tenant or one of the guests. Considering the French doctrine upon which our Code is based and the lack of legislative amendment or alteration of this provision since 1808, we hold that a lessee's liability to her lessor under Article 2723 extends to the negligence of her co-lessees and social invitees. Ms. Bryson chose to share the leased premises with Ms. Hurley and Ms. Stanley, and the three must be considered to have formed a "household" for the period of time they were roommates. Likewise, both *487 Mr. Stein and Mr. Goodman were on the premises by invitation or assent of Ms. Bryson, without the knowledge of, or benefit to, the lessor.[10] Under these circumstances, Ms. Bryson, rather than the lessor, must bear the responsibility for the loss occasioned by the negligence of one of the apartment's occupants.
In its appellate brief, USF & G argues that Ms. Bryson should be held liable for one hundred percent of the damages because the fire was probably started by her guest, Mr. Stein. Alternatively, USF & G contends that as one of the two lessees present that night, she should have been cast in judgment for one-half of its losses. However, because USF & G filed neither an appeal nor an answer to Ms. Hurley's appeal, the judgment below cannot be modified in its favor. La.Code Civ. Proc. Ann. arts.2082, 2133; Matthews v. Consolidated Companies, Inc., 95-1925 (La.12/8/95), 664 So.2d 1191; Eubanks v. Hoffman, 96-0629, p. 8 (La.App. 4th Cir. 12/11/96), 685 So.2d 597, 601. Finding that Ms. Bryson, one of three lessees, is liable under Civil Code article 2723 for at least one-third of the lessor's damages, we express no further views concerning the extent of her liability nor the viability of her claims against Ms. Hurley and Mr. Stein.

2. Award in favor of Jan Gravolet
Ms. Bryson assigns as error the trial court's award of $83.33 to Jan Gravolet, representing one-third of the lessor's $250 deductible, because neither of USF & G's insureds were named in the pleadings as parties to this suit. Exceptions of no cause of action and of no right of action, based upon the same argument, were also filed in this court.[11] USF & G contends that the award is proper because plaintiff's counsel entered his appearance at trial "on behalf of USF & G and Benjamin and Jan Gravolet" without objection, and because it was jointly stipulated that Benjamin and Jan Gravolet suffered a loss of their $250 deductible under the USF & G policy.
In its original petition, filed in September 1990, USF & G asserted that Ms. Bryson, Ms. Hurley and Mr. Stein were liable in tort for the $42,604.32 it had paid to its insured, Benjamin Gravolet, for the property damage resulting from the fire. Although the petition alleged that USF & G was subrogated under its policy to the extent of the damages it had paid, there was no mention of a deductible borne by its insured, Benjamin Gravolet. Neither of the two amending petitions, filed in February and May 1992, which added defendants and asserted claims based upon the lessees' breach of their lease, mentioned any claim for the insureds' deductible, nor was either insured added as a plaintiff. Thus, USF & G's counsel permitted the matter to go to trial five years after filing without formally pleading a claim on behalf of its insureds for their loss. While it is difficult to countenance such inattention, we find that under these particular circumstances the award in favor of Jan Gravolet was proper under the law.
Article 1154 of the Code of Civil Procedure permits pleadings to be enlarged by the consent of the parties, and further allows the pleadings to be amended to conform to evidence at trial, even after judgment. As long as the evidence in question is not relevant to another issue which was properly pleaded, the opponent's failure to object to its admission constitutes implied consent to the enlargement. Roberson v. Provident House, 576 So.2d 992, 995 (La.1991). In this case, the stipulation that the Gravolets had suffered the loss of their $250 deductible was irrelevant to USF & G's claim against Ms. Bryson, which was asserted to be the only issue to be tried. By stipulating to these facts, counsel for the defense consented to an implied amendment of the pleadings to include this claim.[12] Additionally, since Ms. *488 Gravolet appeared at trial as "the plaintiff" and counsel entered his appearance on her behalf, as well as USF & G's, she expressly authorized the plaintiff's attorney to act as her agent in prosecuting her claim, without objection from the defense. See Muscarello v. Ayo, 93 2081, pp. 6-7 (La.App. 1st Cir. 10/7/94), 644 So.2d 846, 850.
Considering the pleadings to have been thus amended, neither of Ms. Bryson's exceptions are sufficient to defeat Ms. Gravolet's recovery in this case. Both her cause of action, the loss of the deductible arising from the fire, and her right of action, her status as insured under the policy, were stipulated.[13] We therefore affirm the judgment in favor of Jan Gravolet for $83.33.

3. Judgment against Vermont Mutual
Defense counsel assigns as further error the entry of judgment against Vermont Mutual Insurance Company, and has also filed an exception of no right of action on Vermont Mutual's behalf, based upon the plaintiff's failure to name and serve the insurer as a defendant.[14] USF & G contends, however, that Vermont Mutual submitted to the court's jurisdiction when defense counsel entered his appearance at trial "for Susan Bryson and Vermont Mutual Insurance Company" and stipulated that Vermont Mutual provided coverage for Ms. Bryson's liability, if any.
Under Article 1201 of the Code of Civil Procedure, a judgment rendered against a defendant who has not been validly cited and served with the petition is absolutely null, even if there is actual notice of the suit. Scullin v. Prudential Insurance Co., 421 So.2d 470, 472 (La.App. 4th Cir.1982). Without such citation and service of process, the court does not have jurisdiction over the person of the defendant. La.Code Civ. Proc. Ann. art. 6. However, if a general appearance is entered by making a plea for any relief other than that specified in Article 7, the defendant will be held to have submitted himself to the court's jurisdiction. Turner v. Leslie, 96-2288, p. 1 (La.12/6/96), 684 So.2d 395, 395.
In this case, neither the original nor amending petitions, detailed above, named Vermont Mutual as a defendant. While all of the parties asserted incidental demands against each other, the name of Vermont Mutual appears only in a few witness and exhibit lists filed by the defendants, not in any of the pleadings. None of the pleadings were served on this insurer, either directly or through counsel. Thus, plaintiff's counsel took no affirmative steps to make Vermont Mutual a party to this suit; if the judgment is to be upheld, it must be based upon Vermont Mutual's implied submission to the jurisdiction of the court.
Although mere physical presence in court does not constitute a general appearance, Bernard v. Bernard, 94-1285, p. 6 (La. App. 3d Cir. 1/9/95), 648 So.2d 509, 513, writ not considered, 95-0335 (La.3/24/95), 651 So.2d 284, and cases cited therein, in this case counsel announced he was appearing at trial to defend Vermont Mutual as well as Ms. Bryson. Not recognizing the insurer's name, the court questioned the attorney as follows:
The Court: What was the name of your insurance company?
Defense: Vermont Mutual.
The Court: Were they named a defendant? Because the original answer by Ms. Bryson didn't have them.
Defense: Originally I don't think they were made a party. I believe Vermont Mutual Insurance Company was named in the amended petition.
The Court: Vermont Mutual Insurance Company?
Plaintiff: Yes.
The Court: Okay....
*489 Shortly after this exchange, defense counsel stipulated that Vermont Mutual had issued a policy which would cover Ms. Bryson's liability, if any were found, which establishes that the insurer's interests were in no way contrary to hers. Furthermore, unless Vermont Mutual considered itself a party to the suit, this stipulation was irrelevant to any issue presented for trial. After rendition of the judgment, defense counsel filed a motion for new trial for "defendants, Susan Bryson and Vermont Mutual Insurance Company." The memorandum in support of this motion makes no jurisdictional challenge, instead presenting only arguments as to Ms. Bryson's liability. Not until counsel filed his appellate brief, along with Vermont Mutual's exception, was there any issue raised concerning the lack of citation and service of process.
Considering the totality of the circumstances, we find that Vermont Mutual entered a general appearance to defend this suit at trial. In view of the fact that the current challenge is made through trial counsel, Vermont Mutual cannot assert that that attorney was without authority to appear on its behalf. Because the insurer has thus waived its exception to the exercise of jurisdiction based upon the lack of citation and service of process, we affirm the judgment rendering Vermont Mutual Insurance Company solidarily liable with its insured, Susan Bryson.
AFFIRMED.
NOTES
[1] Susan Hurley was not a party to the original lease, but was substituted as the third lessee, in place of another young woman, by a written amendment in December 1989, and moved into the premises in January 1990.
[2] His name also appears in the record as "James Guttman."
[3] USF & G contends that earlier, more reliable deposition testimony establishes that Mr. Stein was the only one who sat on the sofa that evening, but the court's conclusion that it could not determine who caused the subsequent fire indicates that the court accepted the trial testimony detailed here.
[4] Although Ms. Hurley dismissed her claims against her co-defendants, the record does not reflect the disposition, if any, of the remaining incidental demands between the parties.
[5] The defense submitted a memorandum, while plaintiff's counsel wrote the judge a letter.
[6] The court found no express stipulation of solidary liability in the contract of lease, as required by former Civil Code article 2093 (now Article 1796), and thus rejected USF & G's claim that Ms. Bryson was liable for 100% of the damages.
[7] See note 3, supra.
[8] See, e.g., Cambridge Mutual Fire Ins. Co. v. State Farm Fire & Casualty Co., 405 So.2d 587, 589 (La.App. 3d Cir.1981).
[9] Neither Pace v. Loyal Order of Moose, 538 So.2d 299 (La.App. 5th Cir.1989), relied upon by USF & G, nor Mercury Insurance Co. v. Hodges, 199 So. 526 (La.App.Orl.1941), cited by Ms. Bryson, involved the issue of who is a member of a lessee's household.
[10] See Mercury Insurance Co. v. Hodges, supra, note 6.
[11] Although USF & G contends that these exceptions are untimely under Code of Civil Procedure article 928 B, such exceptions are proper under Article 2163 when the basis for filing does not arise until the entry of judgment. See, e.g., Eubanks v. Hoffman, 96-0629, p. 5 (La.App. 4th Cir. 12/11/96), 685 So.2d 597, 599.
[12] The lack of a post-trial amending petition to formally add this claim is of no effect because Article 1154 expressly states that "failure to so amend does not affect the result of the trial of these issues."
[13] Ms. Bryson does not argue that Ms. Gravolet could not assert this right on behalf of the community under Article 686 of the Code of Civil Procedure.
[14] USF & G's argument concerning the untimeliness of this exception is without merit, as explained in footnote 10, supra.