782 So.2d 697 (2001)
Clarence BARROW
v.
FAIR GROUNDS CORPORATION and Creative Risk Controls, Inc., a Foreign Corporation Licensed to Do Business and is Doing Business in the State of Louisiana.
No. 2000-CA-0873.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 2001.
Writ Denied May 11, 2001.
*699 Terrence Dugas, New Orleans, Counsel for Plaintiff/Appellant.
Vincent J. Glorioso, Jr., The Glorioso Law Firm, Monique G. Morial, Frilot, Partridge, Kohnke & Clements, L.C. and Robert M. Johnston, Adams and Johnston, New Orleans, Counsel for Defendant/Appellee.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN, Judge MAX N. TOBIAS Jr.).
BYRNES, Judge
Plaintiff-appellant, Clarence Barrow, appeals a judgment dismissing his claim for personal injuries against the defendants, the Fair Grounds Corporation and Creative Risk Controls. We affirm.
Plaintiff was allegedly injured when he slipped on butter at the Fair Grounds on January 28, 1997. On December 4, 1998, plaintiff filed a petition for damages but requested that service be withheld. On March 9, 1999, plaintiff requested that service be made. Plaintiff alleges that both defendants were personally served. On April 6, 1999, the plaintiff filed a motion for preliminary default, which was confirmed on April 9, 1999. On July 28, 1999, the defendants filed a Petition for Nullity of the Default Judgment. In response, plaintiff filed a Motion for Summary Judgment on August 31, 1999, based virtually *700 entirely on the proposition that service of process was proper.
The defendants filed a motion for new trial on September 21, 1999, incorporating by reference the arguments made in support of the nullity petition. Pursuant to a hearing held on November 5, 1999, the trial court rendered judgment in favor of the defendants.
In its written reasons for judgment the trial court found the service on the defendants to be defective. The trial court noted that:
The deposition testimony of David Sherman, the agent for service of process for the Fair Grounds, indicates that personal or domiciliary service of the Petition and Citation in question was not made on Mr. Sherman. Mr. Sherman testified that the Petition and citation were apparently served on a receptionist. This deposition testimony was further supported by the testimony of Deputy Anthony Palisi, the Jefferson Parish Sheriff who served the Petition and Citation. While testifying, Deputy Palisi admitted that he dropped off the Petition and Citation. While testifying, Deputy Palisi admitted that he dropped off the Petition and Citation with the receptionist, and did not serve Mr. Sherman personally.
The trial court found the service on Creative Risk Controls to be defective for similar reasons.
David Sherman, the registered agent for service of process testified that in spite of the return showing that personal service had been made on him that, in fact, it had not. He testified that the Sheriff dropped the service off with his law office receptionist. Mr. Sherman testified that he acts merely as the registered agent for the Fair Grounds, not as their attorney.
Mr. Bennett Powell testified that he is the registered agent for service of process for Creative Risk Controls, Inc. Mr. Powell also testified that no personal service was made on him in spite of the Sheriff's return to the contrary. He said that his secretary brought the petition and citation to him to ask him what to do with it but that it was probably left with the receptionist initially. Mr. Powell is also the president of Creative Risk Controls. He testified that he is served once or twice a year. Mr. Powell did not recall any other instance in which service had been made on him in this manner. He testified that Mr. Johnston called him to ask him if he had been personally served, to which he replied that he wasn't. Mr. Powell is also the registered agent for and owner of Powell Insurance Agency.
Deputy Sheriff Anthony Palisi was the process server who served both the Fair Grounds and Creative Risk Controls. The returns signed by him showed personal service on Creative Risk Controls, Inc. through Bennett E. Powell and personal service on the Fair Grounds through David Sherman. Deputy Palisi testified that he has served Mr. Bennett Powell personally somewhere between 50% and 70% of the times he has served Creative Risk, but the balance of the time he served Mr. Powell's secretary, "Miss Elaine." He clarified this testimony by saying that in this instance he probably served the secretary because "Mr. Powell is very, very rarely in the office himself."
In the case of Mr. Sherman, Deputy Palisi's memory was even clearer that he served either the secretary or the receptionist. He did not even know what Mr. Sherman looked like. He served the Fair Grounds several times a week, but he never served Mr. Sherman personally.
Deputy Palisi explained that the service form he uses only has one choice to fill in *701 at a place of business and that is for "personal service" on the agent for service.[1] Therefore, it is his practice to fill it out in that manner even when he actually makes service on a secretary. It rarely becomes an issue.
The plaintiff objects to allowing Deputy Palisi to give testimony contradicting his written service returns:
[A]n officer cannot testify to anything that would vary, contradict and break down his official returns on the citation
. . .
Smith v. Crescent Chevrolet Co., 1 So.2d 421, 423 (La.App. 1 Cir.1941). However, this rule was modified by the Supreme Court in Roper v. Dailey, 393 So.2d 85, 87 (La.1980):
[W]e do not view the rule which disallows negative testimony by the serving officer to be so inflexible as to preclude information that may establish a pattern or practice of service at variance with statutory requirements. The officer should be able to explain to the court the underlying mode of operation which results in the return of a citation. It is then for the court to decide whether that mode of operation complies with the law of service of process.
We find that the testimony of Deputy Palisi in this matter falls within the "pattern or practice" exception deemed acceptable by the Supreme Court in Roper. Moreover, Roper holds that service on a secretary or receptionist is not personal service.
Mr. Sherman's secretary's deposition was admitted into evidence. She testified that service was left with the receptionist and that she brought it from the receptionist to Mr. Sherman.
The testimony of Mr. Sherman and his secretary and Mr. Powell was corroborated by the testimony of Deputy Palisi. This evidence is sufficient to sustain the trial court's finding that service was not made in accordance with the written return, in spite of the presumption that the written return is correct.
The plaintiff also contends that it was error for the defendants to prove their case under LSA-C.C.P. art. 1231-1235 when LSA-C.C.P. art. 1261 controls in matters of service of process on corporations. LSA-C.C.P. art. 1261 A requires that service on a corporation be made by personal service on the agent for service of process. The defendants contend that that did not occur in this case. LSA-C.C.P. art. 1261 provides for service when there is no agent for service or where "the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent ..." The plaintiff does not contest the fact that there was an agent for service for each of the defendant corporations. Therefore, if personal service was not made on such agent, then the process server must certify that he was "unable, after due diligence, to serve the designated agent" before an alternative means of service becomes acceptable under LSA-C.C.P. art. 1261. There is no such certification of an unsuccessful *702 due diligence attempt to serve the agents in the record, and the record is sufficient to permit the trial court and this Court to infer that no such attempt was made.[2]
However, the main thrust of plaintiff's appeal on the question of sufficiency of service is his argument that the defendants waived their objection to sufficiency of service when they filed an answer after the confirmation of default and by failing to file the declinatory exception of insufficiency of service of process. The defendants, unaware of the confirmation of the default, filed answers after the confirmation of the default. Plaintiff argues that this constitutes a waiver of objection to jurisdiction. LSA-C.C.P. art. 2002(A)(2) allows for the nullification of a judgment against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction. We agree with the trial judge that an answer filed after the default is confirmed does not retroactively confer jurisdiction on the trial court or waive objection to the lack thereof.
There is no merit in plaintiff's contention that the defendants should have filed the declinatory exception of insufficiency of service of process under LSA-C.C.P. art. 925 A(2). LSA-C.C.P. art. 2001 A (2) provides for the annulment of a final judgment rendered:
Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
Under LSA-C.C.P. art. 2001 A(2) an action for annulment, not a declinatory exception, is appropriate where, as in the instant case, a final judgment has been rendered. This conclusion is reinforced when LSA-C.C.P. art. 928 A, which mandates that declinatory exception be filed prior to or along with the answer, is compared to LSA-C.C.P. art. 928 B, which mandates that the "peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision ..."[3] We infer from reading LSA-C.C.P. art. 928 B along with LSA-C.C.P. art. 928 A that the peremptory exception may be brought in the trial court after the answer has been filed and after it is too late to file declinatory and dilatory exceptions. However, even the peremptory exception must be brought in the trial court prior to submission. Per force no declinatory exception may be filed after the rendering of a final judgment.
Any procedural action that would result in the deprivation of another party's right to defend itself in court should be strictly construed. Martin v. Martin, 95-2557, p. 2 (La.App. 1 Cir. 9/27/96), 680 So.2d 759, 760, writ den. 96-2622 (La.12/13/96), 692 So.2d 1065.
There is no question that the filing of an answer prior to the rendition of judgment would have constituted a waiver. But had such an answer been filed, the default could not have been confirmed:
An answer filed after the entry of judgment in a case is of no consequence and *703 has no legal effect whatsoever in that case. C.C.P. Article 1002.
Aswell v. U.S. Fidelity & Guaranty Co., 244 So.2d 243, 244 (La.App. 3rd Cir.1971). LSA-C.C.P. art. 1002 has not been amended since the time it was cited in Aswell. Aswell is still good law.
An answer filed after rendition of judgment is an absolute nullity and has no legal effect. We agree with the reasoning of the court in Rouyer v. Blue Cross of Louisiana, Inc., 447 So.2d 1223, 1225 (La. App. 5 Cir.1984)[4]:
As an alternative argument, Rouyer contends the filing of an answer submitted the defendant to the jurisdiction of the court, hence, the failure to effect a valid service is immaterial. The trial judge did not agree nor do we, because an answer filed after confirmation and entry of default is of no consequence and has no legal effect. Aswell v. U.S. Fidelity & Guaranty Co., 244 So.2d 243 (La.App. 3rd Cir.1971). Further, even if we considered the answer as a general appearance which "joined issue" retroactively, this would also constitute a bar to the default judgment. [Emphasis added.]
Additionally, we note that Rouyer allowed an action for nullity under LSA-C.C.P. art.2002(2) rather than requiring a declinatory exception, as plaintiff contends should be required in the instant case.
U.S. Fidelity and Guar. Co. v. Hurley, 96-1421 (La.App. 4 Cir. 8/6/97), 698 So.2d 482, does not stand for the proposition that an answer filed after the rendering of judgment constitutes a waiver of objection to insufficiency of service of process. In Hurley, the defendant's attorney appeared to represent his insurance company client at the trial, stipulated as to insurance coverage, and after rendition of judgment, filed a motion for new trial. The Hurley court found that these actions by the insurance company defendant constituted appearances and waiver of objection to lack of service.
The plaintiff contends that it was error for the trial judge to rule against him on his motion for summary judgment without granting him a hearing. Plaintiffs motion for summary judgment was filed in opposition to the defendants' petition for nullity. The crux of plaintiffs motion was that service on the defendants was valid and, consequently, the plaintiff's default judgment was valid. Therefore, when the trial court determined that service of process on the defendants was insufficient it meant that there was no merit to the plaintiff's motion. Accordingly, if the failure of the trial court to conduct a separate formal hearing on plaintiff's motion for summary judgment was technically an error, it was harmless error. No hearing on the plaintiffs motion could avoid the nullity of the judgment where service was insufficient. There is no merit to this assignment of error.
The same reasoning applies to the defendants' motion for a new trial. The defendants' motion for a new trial incorporated by reference the grounds asserted in their petition for nullity. We have already found that the defendants' petition for nullity of judgment was meritorious. Therefore, to the extent that it may have been error for the trial court to grant the defendants' motion for new trial because of lack of timeliness or for any other reason, such error was harmless because the motion for new trial was merely *704 cumulative and duplicative of the petition for nullity. We also find that the motion for new trial did not constitute a waiver of defendants' objections to insufficiency of service as it did in Hurley because in the instant case the motion was based on the objections to service and was filed (undoubtedly out of an excess of caution) after the petition for nullity had already been filed asserting the same objections to service. In Hurley, the motion for new trial was addressed to the merits of the case and was, therefore, in effect, an acknowledgment of the Hurley court's authority to adjudicate the matter.
The trial court also found that the default judgment was invalid for the additional reason that the plaintiff failed to request service on the defendants within ninety days of the filing of his petition as required by LSA-C.C.P. art. 1201 C. Plaintiff does not deny that he failed to request service within ninety days, but he contends that when the defendants filed their answer they waived any objection to the tardiness of plaintiff's request for service. However, we have already found that the answer filed by the defendants, coming as it did after the plaintiff had already confirmed judgment by default, was of no legal effect. Therefore, the defendants were entitled to object to plaintiff's failure to comply with LSA-C.C.P. art. 1201 C, and there was no error in the trial court in furnishing that as an additional reason for nullifying the default judgment.
AFFIRMED.
NOTES
[1] This testimony is made all the more plausible by the fact the name of the agent appears to have been typed in in advance of service while Deputy Palisi added his signature, the date and some incidental entries by hand once service was accomplished. Compounding this observation by this Court is the fact that the name of the defendant and the agent are also typed into the place on the form for domiciliary service, obviously in advance as no such service was made. The only thing distinguishing the domiciliary service part of the form from the personal service part of the form is the fact that only the personal service part is signed and dated by the process server.
[2] Compare the instant case with Dukov v. 701 Corp., 95-1310 (La.App. 4 Cir. 1/19/96), 668 So.2d 379, writ denied 96-0442 (La.3/29/96), 670 So.2d 1231 (and cases cited therein), which deals with different but analogous service requirements under the long arm statute, but, nonetheless, is instructive in the similar manner in which this Court enforced some very technical service requirements in annulling a default judgment on a motion for summary judgment.
[3] Emphasis added.
[4] Followed by this Court in Lee v. Winn-Dixie of Louisiana, Inc., 593 So.2d 961, 965 (La. App. 4 Cir.1992).