396 So.2d 1261 (1981)
Mr. and Mrs. Byron TASSIN and Jacqueline Carr
v.
SLIDELL MINI-STORAGE, INC., Aetna Insurance Company, Sidney Tiblier III, Rodney Zeringue, Stovall Construction Company and Overhead Door Company.
No. 80-C-2378.
Supreme Court of Louisiana.
April 6, 1981.
*1262 Jacqueline Carr, Slidell, William M. Magee, Mandeville, for plaintiffs-applicants.
Bienvenu, Foster, Ryan & O'Bannon, William L. Brockman, New Orleans, Thomas H. Gray, Slidell, Schafer & Schafer, John J. Messina, Gary M. Hellman, New Orleans, for defendants-respondents.
MARCUS, Justice.
Mr. and Mrs. Byron Tassin and Jacqueline Carr instituted this action for damages sustained to furniture and related items stored in units leased by them in a storage facility known as Slidell Mini-Storage, Inc. Made defendants were Slidell Mini-Storage, Inc., Sidney Tiblier III and Rodney Zeringue, owners of the storage facility, and their insurer, Aetna Insurance Company. Also named defendants were Stovall Construction Company, contractor of the storage facility, and Overhead Door Company, installer of the doors of the facility.
Defendants (owners/lessors) and their insurer answered generally denying the allegations of the petition and further answered by affirmatively asserting no liability on their part on the ground that the contracts entered into between plaintiffs and Slidell Mini-Storage explicitly provided that Slidell Mini-Storage would not be responsible for any loss caused by water.[1]
The trial judge found that the damage to the goods was caused by water that found its way into the leased units. He further held that despite the clause in each agreement exculpating the lessor for the loss of property stored on the premises caused by "water," the owners of the storage facility were nevertheless liable to plaintiffs under La.R.S. 9:3221[2] since they knew or should have known that the doors on the units were defective inasmuch as they would not withstand the heavy rains and thunderstorms that are common, natural phenomena in southeast Louisiana. Further finding that plaintiffs clearly proved the amount of damages to their property, he rendered judgment in favor of Mr. and Mrs. Tassin for $4,802 and in favor of Jacqueline Carr for $3,140 and against Slidell Mini-Storage. *1263 He further dismissed all third party demands. Slidell Mini-Storage and Aetna were the only parties to appeal. Plaintiffs did not answer the appeal. The court of appeal reversed,[3] finding that the clause in each lease exculpating the lessor for loss of property by water controlled and precluded the imposition of liability on Slidell Mini-Storage. The court further held that, even assuming that La.R.S. 9:3221 was applicable, there was no evidence in the record supportive of a finding that Slidell Mini-Storage knew or should have known of the alleged defect. Upon plaintiffs' application, we granted certiorari to review the correctness of this decision.[4]
The record reflects that plaintiffs entered into identical warehouse lease agreements with Slidell Mini-Storage. The Tassin lease, executed by Byron Tassin, was for unit 16 and was dated April 29, 1976. The Carr lease, executed by Alfred E. Carr, Jr. as agent for his daughter, Jacqueline Carr, was for unit 15 and was dated February 16, 1977. Each agreement contained the following provision under "2. Insurance":
Insurance on property stored on said premises for loss caused by fire, water, theft, Acts of God, or otherwise, shall be obtained at Depositor's option and expense and Warehouseman shall not be responsible for any such losses, whatsoever.
Both Mr. Tassin and Mr. Carr testified that they read the contracts in their entirety including the clause regarding insurance; however, no insurance was obtained on the goods stored in the warehouse.
Subsequent to the execution of the agreements, plaintiffs moved furniture and related items into the units for storage. Upon opening their respective units on or about March 11, 1977, plaintiffs found them to be very damp and most of the items were mildewed and discolored. Ms. Carr and her father testified that items in the back of the unit were sitting in approximately two to three inches of water. Mr. Carr noted that there was no water in the front by the door.
Mr. Carr, qualified as an expert in the building industry, testified that the overhead doors on storage units 15 and 16 did not close flush with the concrete slab flooring despite the rubber stripping on the bottom of the doors, thereby leaving a gap between the door and concrete of about one-fourth inch when the doors were fully closed and locked. Photographs received in evidence revealed that a person could reach a hand and part of an arm under the door and into the unit even when the door was fully closed and locked. Further testimony by Mr. Carr and other witnesses as well as photographs taken of the area showed the concrete slabs of these particular units sloped toward the back of the units. Mr. Carr opined that the cause of the water getting into the unit was the fact that the "door did not seal properly" and that water that entered by rain or otherwise would remain on the floor because the "slab was not level, or sloping toward the front." Testimony by several witnesses as well as certified National Weather Service records indicated that while there was considerable rainfall and thunderstorms during the three weeks prior to March 11, 1977, the weather conditions were not unusual for that time of the year in southeast Louisiana. Defendants offered testimony to the effect that the concrete flooring and overhead doors of the mini-storage units including 15 and 16 were not defectively constructed. Mr. Tiblier, one of the owners of the facility, testified that he had never received any complaints of water damage from any of the tenants either prior or subsequent to the commencement of this suit.
It is clear that the relationship existing between plaintiffs and Slidell Mini-Storage pursuant to the warehouse agreements was one of lease and is therefore governed by the rights and obligations under Louisiana law pertaining to lease agreements. La. Civ.Code art. 2695 provides:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew *1264 nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects the lessor shall be bound to indemnify him for the same.
Nevertheless, the owner can shift responsibility for condition of the premises including liability for injury caused by any defect therein to the lessee pursuant to La.R.S. 9:3221.
However, the codal articles and statutes defining the rights and obliations of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. General Leasing Co. v. Leda Towing Co., Inc., 286 So.2d 802 (La.App. 4th Cir. 1973), cert. denied, 290 So.2d 334 (La.1974). All things that are not forbidden by law may become the subject of or the motive for contracts and, when legally entered into, the contracts have the effect of law between the parties who have made them. La.Civ.Code arts. 1764, 1901. Our jurisprudence is that the usual warranties and obligations imposed under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement of the parties as long as such waiver or renunciation does not affect the rights of others and is not contrary to the public good. Louisiana National Leasing Co. v. A. D. F. Services, Inc., 377 So.2d 92 (La.1979); Klein v. Young, 163 La. 59, 111 So. 495 (1972); General Leasing Co. v. Leda Towing Co., Inc., supra. We must therefore determine if the warehouse agreements in the instant case containing the exculpating clauses effectively relieved owners/lessors of liability to plaintiffs imposed under Louisiana lease law for damages to plaintiffs, goods stored on the leased premises.
First, we are convinced that the damage to plaintiffs' property was caused by water that entered and remained in the storage units due to defects in the structure. Plaintiffs proved by a preponderance of the evidence that the doors and concrete flooring of storage units 15 and 16 were such as to allow water to blow or seep into the units. The doors did not close properly and the concrete sloped to the rear rather than to the front. Moreover, we consider that the clause in each lease agreement clearly and unambiguously transferred liability of the owners/lessors for loss caused by water to property stored on the premises to the lessees including water loss caused by a vice or defect in the premises. The lessees assumed this responsibility by freely entering into the warehouse agreements, thereby dispensing with the implied warranty in their favor established by La.Civ. Code art. 2695.
Although plaintiffs assumed responsibility for water damage caused by a vice or defect in the premises, we are convinced that the owners/lessors knew or should have known that the storage units were defective in that they did not secure against the entering of water into the units resulting from rain normally occurring in southeast Louisiana. It should have been obvious to them that, since the doors did not close flush with the concrete flooring which sloped to the rear, water would enter the units and cause damage to property located therein. Moreover, since the units did not contain shelving, they should have been aware that property would be placed on the flooring and would be affected by any water that might enter and accumulate in the units.
Under the circumstances, even though the lessees assumed responsibility for water damage caused by a vice or defect in the premises, La.R.S. 9:3221 did not relieve the owners/lessors of the responsibility imposed on them by La.Civ.Code art. 2695 because they should have known of the defects in the premises. This is the conclusion reached by the trial judge. We are unable to say that it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1980). To the contrary, we consider that the record fully supports this conclusion. Accordingly, we must reverse the judgment of the court of appeal and reinstate that of the trial judge.

*1265 DECREE

For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the district court is reinstated and made the judgment of this court. All costs of this appeal are assessed against Slidell Mini-Storage, Inc.
NOTES
[1] These defendants further asserted a third party demand against Overhead Door Company alleging that any damage to plaintiffs' property was due to the negligent installation of the storage unit doors. Stovall Construction Company answered denying the allegations of plaintiffs' petition. Overhead Door Company answered denying the allegations of plaintiffs' petition and third partied the other defendants for indemnification and/or contribution should the plaintiffs be successful in their suit.
[2] La.R.S. 9:3221 provides:

The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
[3] 388 So.2d 67 (La.App. 1st Cir. 1980).
[4] 394 So.2d 605 (La.1980).