652 So.2d 1027 (1995)
EDENBORN PARTNERS LIMITED PARTNERSHIP, a Louisiana Partnership in Commendam
v.
Scott KORNDORFFER and E.J. Daussat d/b/a Risky Business.
No. 94-CA-891.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 1995.
Order Denying Rehearing April 17, 1995.
*1029 Stephen T. Wimberly, Connick, Lentini, Mouledoux, Wimberly & deLaup, Metairie, for appellants Scott Korndorffer and E.J. Daussat.
Philip R. Bulliard, Metairie, for appellee Edenborn Partners Ltd. Partnership, A Louisiana Partnership in Commendam.
Before DUFRESNE, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Defendants, Scott Korndorffer and E.J. Daussat (lessees), appeal from the trial court judgment in favor of plaintiff, Edenborn Partners Limited Partnership (lessor), ordering the lessees to vacate the premises at 2424 Edenborn Avenue immediately. For the reasons which follow, we affirm.
Lessees entered into a lease agreement with lessor on July 11, 1991 covering the premises at 2424 Edenborn Avenue in Metairie, Louisiana. The term of the lease commenced on August 1, 1991 and was for a three year period, ending July 31, 1994. Lessees occupied the premises from the commencement of the term[1] and continue to occupy the premises, operating a restaurant by the name of Risky Business. On January 4, 1994 lessor filed a Petition For Possession Of Premises, in which it was alleged that lessees had breached several of the lease provisions, entitling lessor to termination of the lease and immediate possession of the premises. Lessor requested that lessees be ordered to vacate the premises and pay monetary damages.
A judge trial on the merits was held on March 29, 1994 and the matter was taken under advisement with a request by the court for supplemental memoranda. On May 24, 1994, judgment was rendered in favor of lessor, ordering lessees to vacate the premises immediately. All other relief was denied. In his reasons for judgment, the trial court found that lessees had, since the inception of the lease through the trial date, failed to obtain the proper insurance coverage as required by the lease. The court determined that this violation entitled lessor to terminate the lease and, therefore, did not address the other violations.
Lessees' filed a suspensive appeal and bond was originally set at $2,000. Motion was made to increase the bond. At the hearing on that matter, the trial court stated that while it only addressed one violation in the original judgment there were at least four other violations that would have supported the trial court's judgment of termination. The trial court offered to dictate those in the record, but the offer was declined. Lessees now appeal the May 24, 1994 judgment.
Lessees major argument on appeal is that the trial court erred in finding that the inadequate insurance coverage was sufficient grounds for termination of the lease. Lessees argue that the lease should be considered amended because lessor did not complain about this insurance coverage for over two and one-half years or, alternatively, lessor should be estopped from complaining because of the acceptance of rents in the face of the inadequate coverage.
In response, lessor points to certain provisions in the lease agreement that specifically provide that any delay in taking action in connection with a default by lessees "shall not constitute a waiver of the Lessor's rights" and that any default shall give lessor the right, without further notice, to terminate the lease. The lease further provides that any amendments to the lease must be in writing. Therefore, lessor argues that any delay in action on the default did not effect an amendment to the lease or stop lessor from asserting its right to terminate.
More specifically, the lease contained an insurance paragraph that required that the lessees "shall maintain" insurance throughout the term of the lease with limits "of not *1030 less that $500,000 for any one person injured in any one accident, and not less that $1,000,000 for more than one person injured in any one accident." The lease further required lessees to deliver the original or certified copy of the insurance policy to lessor before the term of the lease began, with a certificate from the insurer that the policy could not be cancelled without twenty days written notice to lessor.
Lessor contends that the insurance policy has never been delivered to lessor. On October 8, 1993 lessor requested in writing a current certificate of insurance. This certificate was not delivered to lessor until January 4, 1994, after lessor had filed for eviction. Furthermore, the certificate of insurance indicated that it was a single limit policy for $500,000 coverage, which was below the amount required by the lease agreement.
Lessees argue that $500,000 has been the coverage that they have carried since the inception of the lease and that since lessor has not previously complained, either the lease should be deemed amended or lessor should be stopped from now requiring compliance with the lease agreement. We disagree.
The codal articles and statutes defining the rights and obligations of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261 (La.1981). All things not forbidden by law may become the subject of or the motive for contracts. Tassin v. Slidell Mini-Storage, Inc., supra. Agreements legally entered into have the effect of law on those who have formed them and the courts are bound to give legal effect to such agreements according to the true intent of the parties. La C.C. art. 1983; Tassin v. Slidell Mini-Storage, Inc., supra; Versailles Arms Apartments v. Pete, 545 So.2d 1193 (La.App. 4th Cir.1989).
Certain provisions of the lease pertinent to the dispute before the court provide:
Section 14.3 Non-Waiver. Failure of Lessor to strictly and promptly enforce any of the above rights or any other right Lessor may have under this Lease, or to declare any default immediately upon occurrence thereof, or to delay in taking action in connection therewith, shall not constitute a waiver of any of the Lessor's rights, Lessor expressly reserving the right always to enforce all of the terms of this Lease, or to exercise any of the options set forth in this Lease as well as all rights belonging to Lessor by law, regardless of any extension or indulgence previously granted. Lessor shall have the right to declare any such default at any time and take any such action as might be lawful or authorized under the Lease, either in law or in equity.
Section 17.9. This Lease contains and exhibits the entire agreement between the parties, all previous or contemporaneous agreements being merged herein and waived hereby, and no modifications hereof or assent or consent of Lessor to any waiver of any part of this Lease, in spirit or letter shall be deemed as given or made unless the same be done in writing after date hereof.
Section 14.1. Rights and Remedies. In the event of any default on the part of the Tenant, Lessor shall have the option, without further notice or putting in default, of... (3) terminating this Lease by written notice to the Tenant, and such termination shall be effective as of the date specified by the Lessor in its Notice of Termination.
Thus the lease agreement expressly provides that there can be no amendment to the lease except in writing. It is undisputed that there has been no written amendment to the lease. Further, the lease provides that delay by lessor in asserting any rights under the lease will not constitute a waiver of those rights. Such a clause is legally binding and enforceable. Korson v. Independence Mall I, LTD., 595 So.2d 1174 (La. 5th Cir.1992). While lessees may be correct that lessor could not terminate the lease for past breaches that have apparently been forgiven by acceptance of rent, that is not the case before us. The breach in this case was continuous. *1031 The lessor made demand for a certificate of insurance, which lessees did not produce for at least three months and then only after suit was filed. Upon production of the certificate, it was clear that the insurance coverage was deficient and not in compliance with the lease provisions. Even up until and through the trial date, lessees never complied with the lease by increasing their insurance coverage. As found by the trial court, lessees have breached the lease agreement entitling lessor to terminate the lease. In this finding, the trial court did not err.
Moreover, even if the lease agreement did not expressly preclude an unwritten amendment to the lease, the record in this case does not evidence consent to an amendment of the lease by the actions of the parties. The civil code and statutes do not provide that any legal presumption of consent shall arise from a lessor's silence and acceptance of rent. In cases where the law does not expressly create a legal presumption of consent from certain facts, it is left to the discretion of the judge to determine if consent is to be implied from the particular circumstances of the case. Illinois Cent. R. Co. v. International Harvester, 368 So.2d 1009 (La.1979).
The question of whether lessor knew of the inadequacy in lessees' insurance coverage was disputed at trial. Lessor had the company bookkeeper testify that there was no insurance policy or certificate in the lessees' file and that the first receipt of such an item was after suit was filed. The insurance agent who issued the policy stated that he did not recollect sending lessor a copy of the policy and only stated that he probably forwarded a certificate of insurance to lessor.
In the instant case the trial court listened to the witnesses, assessing credibility, and determined that there had been no consent to a change in the lease agreement. This is a matter of judicial discretion and we see no error in the trial court's determination from the record before us.
Based on the above, we find that the trial court judgment, holding that lessees had breached the lease agreement, entitling lessor to terminate the lease and take immediate possession of the premise, is correct.
Additionally, even if lessor was not entitled to terminate the lease based on the breach discussed above, lessor would still be entitled to immediate possession of the premises because the term of the lease has now expired. The term expired on July 31, 1994. Although the lease contained an option to renew the lease for an additional three year period, lessor had the right to deny lessees the option to renew under certain circumstances. The renewal portion of the lease provided in pertinent part:
If Tenant is late in paying rent when due on more than Three (3) occasions during the term of the Lease, then Lessor may deny Tenant the option to renew this Lease without any further cause. For purposes of this paragraph, a late payment is any rental payment made after the first day of the month when such rent is due.
The record in this case clearly establishes that lessees were late, as defined in the renewal portion of the lease agreement, in paying rent on numerous occasions, certainly more than three. Thus, although lessees attempted to assert the renewal option, the record indicates that lessor clearly had the right to deny the option to renew. Therefore, the lease term expired on July 31, 1994, with rejection of the renewal option, entitling lessor to immediate possession as of that date if not sooner due to the breach addressed supra.
On a procedural point, lessees argue that the judgment of the trial court is null and void because it was not rendered in accord with La.C.C.P. art. 4732.
La.C.C.P. art. 4732, addressing trials in eviction proceedings, provides:
The court shall make the rule returnable not earlier than the third day after service thereof, at which time the court shall try the rule and hear any defense which is made.
If the court finds the lessor or owner entitled to the relief sought, of if the lessee or occupant fails to answer or to appear at the trial, the court shall render immediately a judgment of eviction ordering the *1032 lessee or occupant to deliver possession of the premises to the lessor or owner.
Lessees rely on the case Flores v. Gondolier, Ltd., 375 So.2d 400 (La.App. 3rd Cir.1979) in support of their argument that non-compliance with La.C.C.P. art. 4732 renders the judgment null and void. While that case does lend support to lessees' argument, we are not persuaded to follow that decision.
The Fourth Circuit rendered a pair of cases upon which the Flores court relied, Herman v. Style Line Greetings, Inc., 289 So.2d 876 (La.App. 4th Cir.1974) and Baldo v. Thibodaux, 324 So.2d 457 (La.App. 4th Cir.1975), writ not considered, 326 So.2d 503 (La.1976), writ denied, 328 So.2d 888 (La. 1976). In Herman, the Court of Appeal held that a judgment rendered on a rule for possession on the day following the hearing and outside of the presence of counsel was null and void. Herman was relied on in Baldo which squarely held that the trial court may not take a rule for possession under advisement and subsequently render judgment outside of the presence of counsel. The Supreme Court originally denied writs in Baldo as untimely. However, upon request for reconsideration the Supreme Court, although denying the request for reconsideration of the writ application, indicated that the Court of Appeal judgment in Baldo was incorrect. We agree.
La.C.C.P. art. 4732 appears in the section of the Code of Civil Procedure on Eviction of Tenants and Occupants. A reading of the section, La.C.C.P. art. 4701 et seq., indicates that the eviction procedure is designed to expedite as quickly as possible the determination of the right of the lessor to be restored to possession of the premises. Herman v. Style Line Greetings, Inc., supra. Particularly, the provision in question, providing for judgment to be rendered immediately, was not intended as an aid to the lessee.
In the instant case, the matter was heard on March 29, 1994. At the close of the hearing, memoranda were requested from both sides. Neither party objected at that time to the court not rendering judgment "immediately" and they should not be heard to object now. The trial court was not prepared to render judgment after the hearing and required further legal memoranda to reach a decision in the case. Lessees have not alleged any prejudice in the delay, nor can we see any. To the contrary, the delay has worked in lessees favor, since they retained possession of the premise, which they were not due, for a longer period of time.
The trial court postponed ruling after the hearing, without objection from either party, in order to obtain additional legal memoranda before reaching a decision in the case. We find nothing improper in the trial court's action in this case, nor do we find it in violation of the Code of Civil Procedure.
Finally, lessees argue that the trial court judgment should be reversed because Mr. Bulliard testified as a witness and participated as trial counsel. We disagree.
First, we note and it is not disputed that no objection was made when Mr. Bulliard indicated that he would like to testify in the case. Had objection been made timely, Mr. Bulliard could have elected to either forgo his testimony or allow his co-counsel, who was present, to act as trial counsel. Without objection, the matter is not preserved for appellate review. Furthermore, Mr. Bulliard was not simply a witness in the case, but he was a party in the case, being one of the partners in lessor's partnership. Mr. Bulliard was sworn and questioned by the trial judge about some points. He was cross-examined by lessees' counsel. The case was heard by a judge and not a jury, minimizing any improprieties because of Mr. Bulliard's dual role. While we are mindful of the Ethical Rules cited by lessees, after reviewing the entire record, we find that Mr. Bulliard's conduct does not require a reversal of the judgment in this case.
Accordingly, for the reasons stated above, we affirm the judgment of the trial court holding that lessees must immediately deliver possession of the premises at 2424 Edenborn Avenue to lessor. Costs of appeal are assessed to appellants.
AFFIRMED.
*1033 REHEARING DENIED.
The evidence supporting our decision concerning renewal of the lease was contained in the record and unrebutted by Lessees. Furthermore, rehearing is not required because renewal of the lease is in all events precluded by the finding that Lessees breached the lease and were in default. Accordingly, rehearing is denied.
CANNELLA, DUFRESNE and WICKER, JJ., concur.
NOTES
[1] Lessees actually occupied the premises before the term of the lease under a sublease. But, it is not relevant to the issues currently before the court.