# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2007

No. 07-30296
Summary Calendar

Charles R. Fulbruge III
Clerk

TETRA TECHNOLOGIES INC

Plaintiff-Appellant

V.

LOUISIANA FRUIT COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 2:06-cv-3736

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant TETRA Technologies, Inc. ("TETRA") appeals from the district court's dismissal of its declaratory judgment action against Defendant-Appellee Louisiana Fruit Company ("LA Fruit") for failure to state a claim. Specifically, TETRA, the lessee of land, seeks to terminate the lease and avoid responsibility for repairing a defective bulkhead on the leased premises. For the reasons that follow, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a lease for land that LA Fruit owns on Tiger Pass in Venice, Louisiana. LA Fruit initially leased this land to International Drilling Fluids, Inc. ("IDF") in 1984. The original term of the lease was for five years, with four five-year renewal options. The land was vacant when the parties executed the lease. Thereafter, IDF built several structures on the land, including an improved dock and drilling mud production facility. Pursuant to the lease terms, IDF also built a six hundred foot bulkhead along the property.[1] The lease states that "[a]ny and all buildings, and other structures erected by LESSEE shall be and remain the property of LESSEE, and LESSEE shall have the right to remove same (except bulkhead, fill, foundation and cement slabs) . . . ." The lease further stipulates that "[a]ny deterioration or failure of the bulkhead during the term of this lease shall be immediately repaired by LESSEE at its sole cost and expense."

In 1992, IDF assigned the lease to TETRA. The Assignment noted that IDF had made improvements to the land and transferred all of IDF's "rights, title and interest in and to the Original Lease, together with all of [IDF's] interests in and to any buildings, improvements, fixtures and component parts" on the property. IDF transferred its ownership interest in the buildings and improvements "as is, where is." TETRA agreed to "assume[] the obligations of [IDF] under the Lease."

In March 2005, TETRA obtained an evaluation of the bulkhead's condition from Infinity Engineering Consultants, LLC ("Infinity"). The Infinity report stated that "[w]e understand that, over the last several years, TETRA has noticed that the bulkhead is being subjected to adverse environmental conditions

---

[1] A "bulkhead" is a "wall or embankment, as in a mine or along a waterfront, that acts as a protective barrier." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 251 (3d ed. 1996).

and appears to be in the process of failing." Infinity confirmed TETRA's observations and recommended that TETRA repair and replace parts of the bulkhead.

On August 29, 2005, Hurricane Katrina destroyed the buildings and improvements on the property.[2] Based on this damage, TETRA decided unilaterally to terminate the lease as of August 30, 2005. TETRA stated that it terminated the lease pursuant to Louisiana law, which allows a lessee to terminate a lease when the leased property is partially destroyed or substantially impaired.

TETRA filed this declaratory judgment action on July 13, 2006, seeking a declaration that Louisiana law provided authority for TETRA to terminate the lease and that any responsibility to repair the bulkhead rests with LA Fruit. LA Fruit filed a motion to dismiss on September 1, 2006, for failure to join IDF as an indispensable party, lack of subject matter jurisdiction because joining IDF would defeat diversity, and failure to state a claim. On January 5, 2007, the district court rejected LA Fruit's joinder and diversity arguments but granted LA Fruit's motion to dismiss for failure to state a claim. TETRA appeals. We have jurisdiction over the district court's final judgment dismissing this case pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

A. Louisiana Law Does Not Permit the Termination of this Lease

### 1. Standard of Review

We review a district court's dismissal for failure to state a claim de novo. Kaltenbach v. Richards, 464 F.3d 524, 526 (5th Cir. 2006). We must accept the plaintiff's factual allegations as true. Apani Sw., Inc. v. Coca-Cola Enter., Inc.,

---

[2] Hurricane Katrina apparently did not destroy the bulkhead. Any additional damage that Hurricane Katrina caused is irrelevant given that the bulkhead already needed repair before the hurricane. Additionally, TETRA's argument regarding who has responsibility for repairing the bulkhead rests on the premise that it was previously failing.

300 F.3d 620, 624 (5th Cir. 2002). Further, we will not affirm a Rule 12(b)(6) dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Because this case is in federal court based on diversity jurisdiction, we must follow Louisiana's substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Ashland Chem. Inc. v. Barco Inc., 123 F.3d 261, 265 (5th Cir. 1997).

2.    Discussion

TETRA argues that Article 2715 of the Louisiana Civil Code allows termination of the lease. That statute, entitled "Partial destruction, loss, expropriation, or other substantial impairment of use," provides,

> If, without the fault of the lessee, the thing is partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances. If the lessor was at fault, the lessee may also demand damages.
>
> If the impairment of the use of the leased thing was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease, but is not entitled to diminution of the rent.

LA. CIV. CODE ANN. art. 2715 (2005). TETRA argues that the second part of this statute applies and allows TETRA to dissolve the lease because Hurricane Katrina, an external circumstance, caused an impairment in the use of the "leased thing." LA Fruit responds that this provision does not apply because the "leased thing" includes only the ground and not the buildings or other improvements. TETRA concedes that Hurricane Katrina did not destroy the ground. Therefore, Article 2715 applies only if the lease includes the buildings and improvements that Hurricane Katrina destroyed.

A lease is a contract that is subject to ordinary contract interpretation. Solo Serve Corp. v. Westowne Assoc., 929 F.2d 160, 164 (5th Cir. 1991) (citing Thomas v. Knight, 457 So. 2d 1207, 1209 (La. Ct. App. 1984)). "Under Louisiana law, when a contract is subject to interpretation from the four corners of the instrument, without necessity of extrinsic evidence, interpretation of the contract is a matter of law subject to de novo review." Rutgers, State Univ. v. Martin Woodlands Gas Co., 974 F.2d 659, 661 (5th Cir. 1992); see also LA. CIV. CODE ANN. art. 2046 (2005) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). The district court interpreted the clear language in the four corners of the contract to constitute a "ground lease" that did not include the structures and improvements that IDF erected and Hurricane Katrina destroyed.

The lease between LA Fruit and IDF was for the property listed in Exhibit A. Exhibit A defines the leased premises as "[a] certain piece or portion of ground, together with all the buildings and improvements thereon . . . ." The lease further provides that "[a]ny and all buildings, and other structures erected by LESSEE shall be and remain the property of LESSEE . . . ." According to the four corners of the lease, therefore, LA Fruit leased the ground and any buildings or improvements thereon at the time of the lease's execution, and any additional buildings or improvements that IDF erected remained the property of IDF during the lease. IDF then transferred its interests in these buildings and improvements to TETRA. The Assignment provides that "[TETRA] wishes to accept such transfer of the interests of [IDF] in and to the Original Lease, together with all of Assignor's interests in and to any buildings, improvements, fixtures and component parts located on the Leased Premised [sic]." Thus, based on the plain language in the lease and Assignment, the district court correctly determined that this lease was a "ground lease." Cf. Schwegmann Family Trust

No. 2 v. KFC Nat'l Mgmt. Co., Nos. 06-2447 and 06-2530, 2007 WL 60971, at *4 (E.D. La. Jan. 5, 2007) (holding that Hurricane Katrina did not destroy the "thing leased" because "the land[] is suitable to operate a retail business and [is] free of vices or defects that would prevent its use for that purpose"); West v. Brown, 131 So. 2d 306, 308 (La. Ct. App. 1961) (noting that after a fire destroyed the buildings on the leased premises, "the defendants now have what they leased—a vacant lot—and, therefore, the articles of the Civil Code relied upon have no application to the controversy at hand").

This interpretation of the lease also comports with the general definition of a "ground lease":

> A ground lease is generally a long-term lease (for a term of seldom less than 35 and up to 99 years) of land in which the lessee is obligated to make improvements on the land. The improvements are owned or become owned by the lessee, although their ownership often reverts to the lessor at the end of the lease. . . . In a ground lease, the partial or even total destruction of the buildings on the property ordinarily do not terminate the lease . . . .

PETER S. TITLE, LA. PRACTICE SERIES: LA. REAL ESTATE TRANSACTIONS § 18.33 (2006); see also Myers v. Burger King Corp., 638 So. 2d 369, 375 (La. Ct. App. 1994) (noting that the lessor of a "ground lease" did not also own the building on the premises). Although this lease does not require the original lessee, IDF, to make improvements on the land, the parties contemplated that IDF would erect structures for its business purposes. Further, the lease stipulates that the lessee owns the buildings and improvements, even allowing the lessee to remove these structures when the lease ends.[3] In sum, LA Fruit leased only the ground to IDF, and IDF transferred its ownership interest in the additional buildings and improvements to TETRA. Therefore, because Hurricane Katrina did not

---

[3] The lease provides that the lessee can remove any and all buildings that the lessee erects except the "bulkhead, fill, foundation, and cement slabs."

substantially impair the use of the "leased thing," Article 2715 does not apply. The district court correctly concluded that TETRA cannot prove any facts that allow it to terminate the lease under Article 2715 and properly dismissed this claim under Federal Rule of Civil Procedure 12(b)(6).

B.    LA Fruit is Not Obligated to Pay for the Cost of Restoring the Bulkhead

TETRA also argues that LA Fruit is responsible for restoring the damaged bulkhead because the damage is the result of a design or construction defect that predated TETRA's occupancy of the premises.  The plain language in the four corners of the lease, however, does not support TETRA's argument.  See Rutgers, State Univ., 974 F.2d at 661.  The lease provides that "[a]ny deterioration or failure of the bulkhead during the term of this lease shall be immediately repaired by LESSEE at its sole cost and expense."  That is, IDF originally bore responsibility for repairing the bulkhead.  When IDF assigned its interest in the lease to TETRA, TETRA agreed to assume all of IDF's responsibilities.  Thus, the plain language of the lease stipulates that IDF owned and agreed to repair the bulkhead during the lease term, and the plain language of the Assignment provides that IDF transferred this ownership interest and obligation to repair to TETRA.[4]

TETRA's remaining argument is that Articles 2684 and 2696 of the Louisiana Civil Code obligate LA Fruit to repair the bulkhead.  Article 2684 provides that "[t]he lessor is bound to deliver the thing at the agreed time and in good condition suitable for the purpose for which it was leased."  LA. CIV.

---

[4] Although the Assignment states that nothing in the Assignment "shall be construed or interpreted to constitute a modification of [LA Fruit's] ownership interests under the Lease, including its ownership interests of the bulkhead constructed by [IDF]," this provision is inapplicable because LA Fruit does not own the bulkhead during the lease.  The lease provides that the lessee, not the lessor, owns the buildings and improvements during the lease.  LA Fruit's ownership interest in the bulkhead begins only when the lease terminates and the lessee must leave behind the "bulkhead, fill, foundation, and cement slabs."

CODE ANN. art. 2684 (2005). Article 2696 provides a warranty against "vices or defects" and states that "[t]his warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee." Id. § 2696. TETRA argues that LA Fruit did not deliver the "thing," or bulkhead, without vices or defects. This argument is unavailing, however, because the lease does not include the bulkhead. As discussed above, the lease is a "ground lease" for the ground only and not also for the buildings or improvements on the land. The bulkhead is not part of the leased "thing." Therefore, these statutes do not apply. See West, 131 So. 2d at 308.

Even if the lease did cover the bulkhead, however, the warranty statutes still are inapplicable. The Louisiana Supreme Court has stated that

> the codal articles and statutes defining the rights and obliations [sic] of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. . . . Our jurisprudence is that the usual warranties and obligations imposed under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement of the parties as long as such waiver or renunciation does not affect the rights of others and is not contrary to the public good.

Tassin v. Slidell Mini-Storage, Inc., 396 So. 2d 1261, 1264 (La. 1981) (internal citations omitted); cf. Cerniglia v. Napoli, 517 So. 2d 1209, 1211 (La. Ct. App. 1987) (holding that a statute allowing termination of a lease for total destruction of the premises is inapplicable if the lease contains a clause providing for reconstruction of the property and continuation of the lease). The lease here provides that the lessee, first IDF and now TETRA, shall repair the bulkhead during the lease. Further, IDF transferred the buildings and improvements to TETRA "as is, where is." Therefore, the parties contracted around any warranty that the statute imposed with regard to the bulkhead, and TETRA has provided

no evidence that this waiver affects the rights of others or is contrary to the public good.

In sum, the district court correctly concluded that TETRA cannot prove any facts that obligate LA Fruit to repair the bulkhead.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's decision to grant LA Fruit's motion to dismiss for failure to state a claim.

AFFIRMED.