984 So.2d 894 (2008)
LIFECARE HOSPITALS OF NEW ORLEANS, L.L.C. d/b/a Lifecare Hospitals of New Orleans at Kenner Regional
v.
LIFEMARK HOSPITALS OF LOUISIANA, INC. d/b/a Kenner Regional Medical Center.
No. 07-CA-914.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 2008.
*895 Lambert J. Hassinger, Jr., Richard G. Duplantier, Jr., Attorneys at Law, New Orleans, Louisiana, and Steven B. Fisher (Pro Hac Vice), John R. Schelieter (Pro Hac Vice), Attorneys at Law, Chicago, Illinois, for Plaintiff/Appellant.
George Denegre, Jr., Shannon S. Holtzman, Jason R. Johanson, Attorneys at Law, New Orleans, Louisiana, and Kurt S. Blankenship, Robert I. Baudouin, Attorneys at Law, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Federal Insurance Company ("Federal") appeals a summary judgment rendered in favor of defendant, Lifemark Hospitals of Louisiana, Inc. d/b/a Kenner Regional Medical Center ("Lifemark"), dismissing Federal's Petition for Intervention. For the reasons which follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Pursuant to a lease agreement dated March 24, 2004, plaintiff, Lifecare Hospitals of New Orleans, L.L.C. d/b/a Lifecare Hospitals of New Orleans at Kenner Regional ("Lifecare"), leased space from Lifemark on the fifth floor of Kenner Regional Medical Center ("Kenner facility"). At this location, Lifecare operated a long-term acute care medical facility.
On August 29, 2005, as a result of Hurricane Katrina, the Kenner facility sustained physical damage, including damage to the fifth floor that had been leased and occupied by Lifecare. Following Hurricane Katrina, operations at the Kenner facility were interrupted and Lifecare did not occupy the fifth floor property or run its acute care facility. By letter dated November 23, 2005, Lifemark terminated its *896 lease with Lifecare pursuant to paragraph 23(a) of the lease agreement, which provides that either party may terminate the lease upon written notice to the other in the event that damage caused by partial destruction of the premises cannot be repaired within six months from the happening of the damage.
On August 29, 2005, Lifecare had in full force and effect a policy of property insurance issued by Federal, which afforded coverage to Lifecare for:
. . . direct physical loss or damage to building or personal property caused by or resulting from a peril not otherwise excluded, not to exceed the applicable Limit of Insurance for Building or Personal Property shown in the Declarations.
Pursuant to the policy, Federal agreed to pay Lifecare for actual:
. . . . business income loss you incur due to the actual impairment of your operations; and extra expense you incur due to the actual or potential impairment of your operations, during the period of restoration, not to exceed the applicable Limit of Insurance for Business Income with Extra Expense shown in the Declarations.
This actual or potential impairment of operations must be caused by or result from direct physical loss or damage by a covered peril to property at, or within 1,000 feet of, the premises.
Lifecare submitted and Federal accepted a Sworn Statement in Proof of Loss in the amount of $12,332,578, for its claim for damages or losses to multiple properties owned or leased by Lifecare as a result of Hurricane Katrina. The amount of this claim attributable to the Kenner facility was $5,111,418.00. In satisfaction of Lifecare's claim for business income and extra expense losses associated with the Kenner facility from August 29, 2006 through July 31, 2006, Federal paid Lifecare $4,983,418.00. Lifecare submitted and Federal accepted a sworn Subrogation Receipt in favor of Federal for $12,332,578.
On January 26, 2006, Lifecare filed a "Petition for Preliminary and Permanent Injunctions, Specific Performance and Damages," against Lifemark asserting that Lifemark wrongfully terminated the lease agreement in bad faith. On August 25, 2006, Federal filed a "Petition for Intervention," alleging that a substantial portion of the losses sustained by Lifecare were incurred as a result of Lifemark's bad faith breach of the lease agreement and seeking reimbursement for sums that it paid to Lifecare under its policy of insurance. Federal claimed that, pursuant to the insurance policy, it is subrogated to the rights of Lifecare and has the right to seek reimbursement from Lifemark for sums paid to Lifecare under the policy.
On January 29, 2007, Lifemark filed a Motion for Partial Summary Judgment, asserting that Federal's Petition for Intervention should be dismissed, because Federal's subrogation claims are precluded by both contract and Louisiana law. Lifemark argued that based on the numerous stipulations of facts agreed to by Lifemark and Federal in a document entitled, "Stipulations," there were no issues of material fact and that the issue of the validity of Federal's subrogation claims could be determined as a matter of law.
In support of its Motion for Partial Summary Judgment, Lifemark contended that Federal did not have any right to subrogation, because paragraph 21(c) of the lease agreement between Lifemark and Lifecare contains a waiver of subrogation as follows:
Should either Landlord or LifeCare sustain a loss by reason of fire or other casualty which is a type or risk covered *897 by such party's fire and extended coverage insurance policy, and if such fire or casualty is caused in whole or in part by acts or omissions of the other party, its agents, servants or employees, then the party sustaining such loss (a "Loss Party") agrees that to the extent the Loss Party is compensated for such loss by its insurance proceeds, the Loss Party shall have no right of recovery against the other party, or the agents, servants or employees of the other party. No third party shall have any right of recovery by way of subrogation or assignment or otherwise.

(Emphasis added.)
Lifemark further noted that the insurance policy issued by Federal to Lifecare contains a subrogation provision, but the policy also specifically permits the insured to waive subrogation in advance of any loss. These provisions are set forth in the insurance policy issued by Federal to Lifecare as follows:
Transfer of Rights of Recovery to Us
If any person to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair our rights.
You may waive your rights against another party in writing:
A. prior to direct physical loss or damage to insured property.
Lifemark argued that Lifecare specifically waived subrogation in the lease agreement and that this waiver was executed prior to any loss, as required by the insurance policy.
Lifemark further argued that because legal subrogation did not apply in this instance, conventional subrogation would have to be established. Lifemark asserted that Federal cannot show that it is subrogated to Lifecare's rights by conventional subrogation, because the Sworn Statement in Proof of Loss and the Subrogation Receipt both indicate that Federal paid sums to Lifecare for damages or losses caused by Hurricane Katrina. Lifemark argued that there is no document granting subrogation rights to Federal for damages caused by Lifemark's alleged breach of the lease agreement.
On February 1, 2007, Federal filed a Cross-Motion for Partial Summary Judgment, seeking a judgment by the trial court declaring that Federal is a conventional subrogee to Lifecare's rights against Lifemark and that the subrogation waiver in the lease agreement between Lifecare and Lifemark does not preclude or limit Federal's subrogation action.
In its Motion for Partial Summary Judgment, Federal admitted that legal subrogation does not apply in this case, but it asserted that conventional subrogation was established by the insurance policy, the Sworn Statement in Proof of Loss, and the Subrogation Receipt. Federal stated that it paid Lifemark for property damage and business interruption losses resulting from a "covered peril" during the policy term. It argued that once it paid for covered losses under the policy, it was subrogated to Lifecare's rights against Lifemark and thus, it had the right to pursue any cause of action against Lifemark, including a cause of action for breaching the lease. Finally, Federal argued that the subrogation waiver in the lease between Lifecare and Lifemark does not preclude Federal's subrogation action, because 1) Lifemark cannot rely on the lease that it breached in order to defeat Federal's subrogation claims; 2) Lifemark cannot limit its liability for intentional wrongful conduct; and 3) the waiver in the *898 lease agreement does not apply to breach of contract claims.
The Motions for Partial Summary Judgment filed by Lifemark and Federal came for hearing on April 24, 2007. In a judgment dated May 18, 2007, the trial court granted Lifemark's Motion for Partial Summary Judgment, denied Federal's Motion for Partial Summary Judgment, and dismissed Federal's Petition for Intervention with prejudice. In its reasons for judgment, the trial court stated in part:
LifeCare entered into a lease and clearly waived the right of subrogation in the lease. Federal entered into an insurance contract with LifeCare which specifically permitted LifeCare to waive subrogation. A subrogation clause in a contract is not contrary to law or public policy. The Court thus finds that the parties unequivocally waived the right to subrogation.
On May 11, 2007, Federal filed a Motion for Reconsideration and/or New Trial, which was denied by judgment dated August 21, 2007. Federal appeals.
LAW AND DISCUSSION
It is well settled that appellate courts review summary judgments de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730, 750; Nuccio v. Robert, 99-1327, p. 6 (La.App. 5 Cir. 04/25/00), 761 So.2d 84, 87, writ denied, 00-1453 (La.6/30/00), 766 So.2d 544. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Summary judgment procedure is favored, and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Hayne v. Woodridge Condominiums, Inc., 06-923 (La.App. 5 Cir. 4/11/07), 957 So.2d 804, 807; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 195.
On appeal, Federal asserts several arguments in support of its position that the trial court erred in granting Lifemark's Motion for Partial Summary Judgment and denying Federal's Motion for Partial Summary Judgment. In its first argument, Federal contends that the trial court committed legal error by deciding a factual issue not before it and with no evidence to support such a determination. Federal claims that the trial judge improperly made the factual finding that Lifemark did not terminate the lease in bad faith. It contends that the trial judge allowed Lifemark to rely on the terms of the lease agreement, but Lifemark is not entitled to rely on a lease agreement if it breached the agreement in bad faith, which is a factual issue not yet resolved. Federal cites N-Y Associates Inc. v. Board of Commissioners of the Orleans Parish Levee District, 04-1598 (La.App. 4 Cir. 2/22/06), 926 So.2d 20, writ denied, 06-666 (La.5/26/06), 930 So.2d 31, claiming that it stands for the proposition that "one who deliberately and in bad faith breaches a contract cannot turn around and rely on that very same agreement it ignored."
Our review reveals that the trial judge did not make the factual determination that Lifemark did not terminate the lease agreement in bad faith. The reasons for judgment reveal that the trial judge based his decision on the clear terms of the lease agreement, insurance policy, and other documents, not on any impermissible factual determinations, such as whether or *899 not Lifemark breached the terms of the lease agreement in bad faith. Further, Federal's reliance on N-Y Associates, Inc. v. Board of Commissioners of the Orleans Parish Levee District is clearly misplaced. The primary issue in that case was whether or not the Board of Commissioners was in bad faith when it terminated its contract with N-Y Associates, Inc. The case does not stand for the proposition that all terms of a contract are invalid where there are allegations of bad faith breach of contract or that none of the provisions of a contract may be relied upon until a preliminary determination of bad faith has been made. Moreover, even if the trial court had made impermissible factual determinations, this Court does not consider any determinations made by the trial court when reviewing summary judgments de novo. Federal's first argument is clearly without merit.
In its second argument, Federal contends that the trial court's ruling violates LSA-C.C. art. 2004, which prohibits a contractual provision by which a party, in advance, waives its claim for damages stemming from gross negligence or intentional bad acts. Federal claims that application of the subrogation waiver is improper where, as in this case, there are claims of intentional and bad faith breach of contract.
LSA-C.C. art. 2004 provides in pertinent part:
Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.
Comment (e) to this article provides that art. 2004 does not govern "indemnity" clauses, "hold harmless" agreements, or other agreements where parties allocate between themselves, the risk of potential liability to third parties. In Bertrand v. Lala, 600 So.2d 788, 789 (La.App. 5 Cir. 1992), this Court found that the language in LSA-C.C. art. 2004 clearly refers to clauses excluding or limiting the liability of one party to a contract to the other party to the contract, and not to agreements that allocate the risk of injury to third parties. See also, Myers v. Burger King, 618 So.2d 1123, 1127-1128 (La.App. 4 Cir.1993), writ denied, 629 So.2d 348 (La.1993).
In the present case, Federal is not a party to the lease agreement containing the waiver of subrogation. Further, the subrogation waiver in the lease agreement did not exclude or limit Lifemark's liability to its lessee, Lifecare. Rather, it allocated the risk of potential liability toward third persons by prohibiting subrogation. Accordingly, we find that LSA-C.C. art. 2004 is inapplicable, and Federal's argument on this issue is without merit.
In its third argument on appeal, Federal contends that Lifemark cannot rely on the lease that it intentionally breached in order to defeat Federal's right of subrogation. Thus, Federal asserts that summary judgment was improper because there is an issue of fact regarding whether or not Lifemark breached the lease in bad faith. Federal's argument is without merit.
Agreements legally entered into have the effect of law on those who have formed them and the courts are bound to give legal effect to such agreements. LSA-C.C. art. 1983; Edenborn Partners Ltd. Partnership v. Korndorffer, 94-891 (La.App. 5 Cir. 3/1/95), 652 So.2d 1027, 1030. The fact that a contract may have been breached does not render inoperative the remaining contractual provisions, including those that govern breach. Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A), 01-2219 (La.App. 1 Cir. 11/20/02), 837 So.2d 11, 31, writs denied, 03-418 (La.4/21/03), 841 So.2d 805, and 04-417, *900 04-427, 04-438 (La.5/16/03), 843 So.2d 1129-1130.
The issue of whether or not Lifemark terminated the lease in bad faith does not control whether or not the subrogation waiver in the lease is valid. Thus, Federal's argument on this issue is without merit.
In its fourth argument, Federal contends that the waiver of subrogation provision in the lease only applies to losses caused by fire or other casualty, not to losses caused by bad faith breach of contract. Federal asserts that no claim is being made against Lifemark for damages or losses caused by Hurricane Katrina. Rather, it argues that its reimbursement claims are based on Lifemark's bad faith breach of contract, which is outside the scope of the subrogation waiver. This argument is without merit.
According to the Subrogation Receipt and Sworn Statement in Proof of Loss, Federal paid sums to Lifecare for damages and losses incurred due to Hurricane Katrina, and Federal was subrogated to Lifecare's rights arising from these losses. There is no evidence that, pursuant to the insurance policy, Federal paid for losses due to Lifemark's alleged breach of contract. Thus, the evidence does not reveal that Federal has any rights via conventional subrogation to Lifecare's claims for breach of contract. This argument is without merit.
Our de novo review of the Motions for Partial Summary Judgment and the exhibits in support thereof reveals that the trial court was correct in granting Lifemark's motion and denying Federal's motion. The material facts in this case are undisputed and are set forth in the "Stipulations" document submitted jointly by the parties. These facts, along with the evidence, reveal that Lifemark was entitled to summary judgment dismissing Federal's Petition for Intervention. Federal paid Lifecare for damages and losses due to Hurricane Katrina. The lease between Lifecare and Lifemark specifically waived subrogation rights for such damages or losses. Further, the insurance policy issued by Federal to Lifecare specifically permitted the insured, Lifecare, to waive subrogation. Finally, the documents and exhibits do not reveal that Federal was conventionally subrogated to any rights of Lifecare for breach of contract. Accordingly, based on our de novo review of this matter, we affirm the judgments of the trial court.
DECREE
For the foregoing reasons, we affirm the trial court's May 18, 2007 judgment granting Lifemark's Motion for Partial Summary Judgment, denying Federal's Motion for Partial Summary Judgment, and dismissing Federal's Petition for Intervention. We further affirm the trial court's August 21, 2007 judgment denying Federal's Motion for Reconsideration and/or New Trial.
AFFIRMED.