# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 14, 2011

No. 11-30294
Summary Calendar

Lyle W. Cayce
Clerk

REGIONS FINANCIAL CORPORATION; REGIONS BANK,

Plaintiffs-Appellees

v.

PARISH PARTNERS COMPANY, L.L.C.,

Defendant-Appellant

PARISH PARTNERS COMPANY, L.L.C.,

Plaintiff-Appellant

v.

REGIONS FINANCIAL CORPORATION,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
(08-CV-4301)

No. 11-30294

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

A dispute arose out of a commercial leasing contract between Parish Partners Company, L.L.C. (Parish Partners), as the lessor, and Regions Bank or Regions Financial Corporation (collectively, Regions), as the lessee, regarding a building that was substantially damaged by Hurricane Katrina on August 29, 2005. On summary judgment, the district court found that Parish Partners failed to rebuild and make repairs within a reasonable time under the agreement and terminated the contract. Parish Partners challenges the district court's ruling that it failed to restore the leased premises to the condition it was in before Hurricane Katrina. For the reasons discussed below, we AFFIRM.

## FACTS[1]

Parish Partners was the successor-in-interest as the lessor under a written lease agreement dated October 1, 1992. Regions Bank was the successor-in-interest to Secor Bank and Federal Savings Bank, the original lessee. The leased premises consists of a portion of the first floor of a building and drive-through banking area located in New Orleans, Louisiana (Leased Premises). The original term of the lease ended on August 31, 2002, but Parish Partners and Regions signed a First Amendment to the lease, extending it through August 31, 2012.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Procedural posture: On August 15, 2008, Parish Partners filed a petition for declaratory relief and damages against Regions Financial Corporation in the Civil District Court for the Parish of New Orleans, State of Louisiana (Regions Bank was not a defendant in this suit). Parish Partners sought unpaid rent and insurance proceeds. On August 28, 2008, Regions filed a complaint against Parish Partners in the Eastern District of Louisiana for declaratory judgment seeking the termination or dissolution of the lease effective August 29, 2005. On September 9, 2008, Regions filed a notice of removal from the Civil District Court and the Eastern District of Louisiana ordered that the cases be consolidated.

No. 11-30294

Hurricane Katrina arrived on August 29, 2005, and caused severe damages to the Leased Premises. Damages included flood water in the building, roof damage, broken windows, and a variety of other damages caused by wind and rain. Parish Partners attempted to communicate with Regions from September, 2005, to discuss casualty loss, rent abatement, photographs, and information related to repairs. Parish Partners also communicated to Regions that it elected to make repairs under the lease agreement rather than cancelling the lease.[2]  Parish Partners discovered that Regions had hired an architect for design renovations and attempted communications to inquire about it. But Regions was non-responsive when Parish Partners inquired about the hire. Following Katrina, Parish Partners changed the locks to the Leased Premises to gain access in accordance with Section 18 of the lease agreement.[3]  Parish Partners gained access to the Leased Premises and made an assessment of the damages; it chose to rebuild, thus its obligations to make repairs came into existence on approximately October 30, 2005. Parish Partners's obligation for repairs were subject to delays such as unavailability of materials or government regulation; however, these were non-factors for this construction project. Both parties agree that the Katrina-caused damages were extensive but repairs could be completed within 120 days because the required construction work was very typical of a branch bank. It is not clear, however, whether Parish Partners could have repaired the Leased Premises to pre-Katrina conditions within 120 days immediately after the Hurricane because New Orleans was shut down for at least thirty days after the storm. On the other hand, expert testimony provides

---

[2] Under the lease agreement, it was required within sixty-days to exercise its option of terminating the lease agreement or making repairs to the property.

[3] This Section discusses access to the Leased Premises by the lessor or lessor's agents; the provision gives the lessor the right at all times to enter and examine the Leased Premises or make repairs to the property.

that contractors were on the ground within two weeks after Katrina's landfall and were capable of completing construction work as necessary materials and manpower were available. As of August 12, 2006, the Leased Premises was in a shell condition, consisting of bare slab and Sheetrock walls. By this time, Parish Partners had replaced rusted studs and installed new ceiling tiles among other repairs. During the course of repairs, Parish Partners received some of the insurance proceeds to which it was entitled and was able to complete the restoration to a "rentable shell condition" by August 28, 2006.

## STANDARD OF REVIEW

This court has jurisdiction under 28 U.S.C. § 1291 and reviews the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Golden Bridge Tech., Inc., v. Motorola, Inc.* 547 F.3d 266, 270 (5th Cir. 2008). The granting of summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When the moving party has carried its burden, the non-moving party must demonstrate specific facts showing a genuine factual issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

The crux of this dispute is the extent and timeliness of Parish Partners's restoration of the damaged Leased Premises following Hurricane Katrina. Parish Partners contends that it has sufficiently performed under the lease agreement. Various repairs were made to the air-conditioning and heating system, all metal rusted studs were replaced, and the storefront was restored. Furthermore, Parish Partners argues that the district court erred in dissolving the contract because, at the very least, Parish Partners substantially performed under the lease agreement, and the remaining work could have been quickly completed.

No. 11-30294

Regions contends that Parish Partners decided to repair and rebuild the damaged property instead of terminating the lease agreement.  And because Parish Partners did not exercise its right to terminate the lease within sixty days of Hurricane Katrina, it had an obligation to repair and restore the damaged premises with reasonable promptness. Reasonable promptness under the instant agreement is 120 days, or approximately four months after damages occurred.

1) *Timing of the Repairs*

Section 7 of the lease agreement discusses the parties' rights and duties related to casualty and damages; this Section states in relevant part:

> "CASUALTY PROVISIONS: Lessee shall give lessor immediate notice of any damage to the Leased Premises caused by fire or other casualty. If the Leased Premises or Building is damaged by fire or other casualty to such an extent that same can be repaired within a period of one hundred twenty (120) days, Lessor may, at its option, rebuild or repair, as the case may be, or cancel and terminate this Lease. Unless Lessor notifies Lessee in writing within a period of sixty (60) days after the occurrence of the fire or other casualty that it does not intend to rebuild or repair, it shall then be obligated to rebuild or repair...All work of repairing or rebuilding shall be performed with reasonable promptness, due allowance being made for reasonable delay which may arise by reason of adjustment or loss under insurance policies on the part of Lessor or Lessee and for reasonable delay on account of strike, lockout, governmental regulation, or other cause beyond Lessor's control...If Lessor elects to cancel by giving notice to Lessee within the 60-day period herein above provided, this Lease shall thereupon terminate and expire as of the date of the occurrence of the fire and other casualty..."

The parties do not dispute that the Katrina-caused damages were within the extent that could be repaired in 120 days; an expert report on record provides that sufficient materials were available so that a reasonably competent general contractor could have restored the premises to pre-Katrina conditions. The construction work would be typical of a branch bank and there were no

No. 11-30294

logistical challenges that would have affected construction time. Moreover, the trial court accepted as true Parish Partners's evidence that repairs could have been completed within 120-days. And because Parish Partners elected to make repairs rather than cancel the contract, it was obliged to complete the restoration within the contracted time frame.[4]

Section 7 of the lease agreement requires Parish Partners to complete restoration of the Leased Premises within approximately four months after Hurricane Katrina struck. According to Parish Partners's brief and sworn affidavit of Mokhtar Abelmalek, an employee of the construction company who oversaw the repairs to the Leased Premises, the property was ready to receive Regions on August 28, 2006. Basic repairs for things such as the cooling and heating unit and electricity were made by June-July, 2006. According to Parish Partners, the condition of the Leased Premises as of August 28, 2006 was a "shell condition," which is all the lease requires of it.

But the lease requires repair work to be completed approximately at the end of December, 2005. Even if the 120-days count down did not begin until after the sixty-day evaluation period discussed in Section 7 (the clock then would have begun on approximately October 30, 2005), the repairs should have been completed no later than February 28, 2006. Either application produces the same result: Parish Partners failed to complete its repair obligations with reasonable promptness under the leasing agreement. The parties agree that the property could have been repaired within 120-days. But as of January 27, 2010, Parish Partners had failed to repair the Leased Premises to a suitable condition for a branch bank. The record shows that Parish Partners had the ability

---

[4] Parish Partners alleges that Regions failed to turnover insurance proceeds under the lease agreement, presumably to argue that Regions's actions hindered Parish Partners from completing repairs on time. But full receipt of insurance proceeds did not financially hinder it from completing repairs as it was able to eventually complete the restoration work to a rentable shell condition.

(available general contractors and funding) to complete repairs but it did not. It points to Regions's uncooperative behavior as a reason for its inability to complete the restoration project.[5] But nothing in the record supports the notion that Regions *caused* Parish Partners's inability to restore the Leased Premises to a condition similar to its pre-Katrina condition, which was suitable for an operational branch bank. General contractors with adequate manpower and materials were available for work, therefore Parish Partners had the necessary resources to complete the restoration project.

2. *The Leased Premises in a Shell Condition*

Parish Partners contends that it was obligated to restore the Leased Premises to a shell condition and it did so by August 28, 2006. It also holds that the lease agreement does not explicitly say that the 120-days time frame begins immediately after the damages are caused. But testimony by Ms. Denise Gaines[6] established that the obligation to make repairs began on October 30, 2005, allowing for the sixty-day evaluation period.

Regions argues that by August, 2006, the Leased Premises lacked finished floors and interior doors. The district court found that, as of the day of summary judgment arguments, the Leased Premises still had not been restored to pre-Katrina conditions or similar to those conditions. The essence of Regions's argument is that the Leased Premises in a "shell condition," which lacks doors and door frames among other things, is not in a condition suitable to operate a branch bank. Therefore, dissolution of the lease is appropriate.

---

[5] Parish Partners argues that Regions ignored essentially all communication from it. Many of Parish Partners's communications related to requests for drawings, photographs, and other information regarding repair work. Regions hired architects to design renovations but ignored Parish Partners's request for input.

[6] Ms. Gaines is the Managing Director at Kailas Companies, which is a company that manages real estate property owned by Parish Partners. She has been employed there for fourteen years.

No. 11-30294

The lease does not discuss Regions's remedies if Parish Partners defaults. Thus, its remedies are determined by the Louisiana Civil Code. *Tetra Techs., Inc., v. La. Fruit Co.*, 252 F. App'x 639, 644 (5th Cir.2007)(citing *Tassin v. Slidell Mini-Storage, Inc.*, 396 So.2d 1261, 1264 (La. 1981)). Parish Partners evaluated the damages caused by Katrina and decided to make repairs. Therefore, it was obliged to restore the Leased Premises to a condition adequate for operating a bank. La. Civ. Code 2682 ("The lessor is bound: (2) To maintain the thing in a condition suitable for the purpose of which it was leased..."). A failure to perform under the agreement may cause the lease to be cancelled. *See Reed v. Classified Parking Sys.*, 232 So. 2d 103, 107 (La. App. Ct. 1970)(citations omitted); La. Civ. Code 2719 (stating that "[w]hen a party to the lease fails to perform his obligations under the lease or under this Title, the other party may obtain dissolution of the lease..."). The Louisiana Civil Code also states that "[w]hen the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved..." La. Civ. Code 2013. The record shows that as of August 28, 2006, one year after Katrina caused the damages, the Leased Premises was not restored to a condition similar to a pre-Katrina operational branch bank; in other words, it was not fit for occupancy for the intended use of a bank. And August 28, 2006, is clearly beyond the 120-days time frame (or 180-days if the sixty-day evaluation period is included) contemplated by the lease.

Because Section 7 of the contract provides a time frame for casualty-related repairs and those repairs were not completed within the contemplated time (nor did Parish Partners substantially perform within the contemplated period), other arguments need not be addressed. The contractual duties were clear and Parish Partners failed to restore the Leased Premises within the contract period, therefore we AFFIRM the district court.